CURRIE & NAYLOR, Ex'ors of JACOB ODOM, *v.* P. R. MURPHY et al.

1. WILL: ABATEMENT OF LEGACIES: RESIDUUM.—In the absence of any express direction in the will to the contrary, the payment of the testator's debts, and the administration, and funeral expenses, is chargeable upon the residuum; and the residuary legatees have no right to call upon specific or general legatees to abate; but residuary legacies may be exonerated from the payment of debts and expenses, by a direction in the will to discharge them out of a particular part of the estate. See *Brown* v. *Goombridge*, 4 Madd. R. 495.; 1 Jac. & Walk. 102.

2. SAME: SAME: BEQUESTS IN LIEU OF DOWER ENTITLED TO PREFERENCE.—If there be any valuable consideration for a testamentary gift, it will be entitled to preference of payment over other general legacies which are mere bounties: a bequest to the widow in lieu of her dower, is upon a valuable consideration, and hence entitled to preference over voluntary legacies.

3. SAME: SAME: INTENTION TO CHARGE DEBTS ON PARTICULAR FUND: CASE IN JUDGMENT.—A bequest of "all the money and choses in action" of the testator, "which shall remain after the payment of his just debts," creates a charge upon the fund for the payment of debts, and exonerates the residuum.

4. SAME: SAME: ADMINISTRATION AND FUNERAL EXPENSES, NOT DEBTS OF TES-

TATOR.—The funeral and administration expenses, are not debts of the testator, and will not be included in a provision made in the will for the payment of debts out of a particular fund, on which they would not otherwise be chargeable.

5. SAME: LEGATEES NOT ENTITLED TO COMPENSATION FOR LOSS OF FUND BEQUEATHED: CASE IN JUDGMENT.—The testator, before his death, had made an invalid sale of land, and held the note of the purchaser for the balance of the purchase-money unpaid: the executor offered to execute a deed, if the purchaser would pay the note, which he refused: the executor then brought suit for, and recovered the land, and afterwards sold it as a part of the residuum, and the purchaser recovered back the purchase-money he had paid. By the first clause of the will, all the notes and choses in action belonging to testator, and remaining after the payment of debts, were bequeathed to the widow, and by the fourteenth clause, the residuum was given to other parties. *Held*, that the residuary legatees were entitled to the proceeds of the sale of the land, and that the widow was not entitled to reimbursement out of them, for the note of the purchaser held by the testator at his death.

6. SAME: CONSTRUCTION OF.—It is always the safest mode, in the interpretation of wills, to adhere to the words of the instrument, without considering either circumstances arising *aliunde*, or calculations that may be made as to the amount of the property, or the consequences which may flow from any particular construction.

APPEAL from the Court of Probates of Kemper county. Hon. Thomas P. Bell, judge.

Jacob Odom made his last will and testament, which, after his death, was duly admitted to probate.

The first clause of the will is as follows:—

"I give and bequeath unto my beloved wife, Jane Odom, the following slaves" (describing them). "I also give and bequeath unto my beloved wife, Jane, all of my household and kitchen furniture, of every description whatever, except such as is hereinafter specifically devised. I also give and bequeath to my wife Jane, all the moneys, notes, accounts, and evidences of debt of every description whatever, and choses in action, which shall remain after the payment of all my just debts, and the legacies hereinafter bequeathed. I also give and bequeath to my wife the following lands (describing them); to have and to hold the above described premises to my said wife Jane, and her heirs and assigns forever: the above devise is to my wife in lieu of her dower."

In the next twelve clauses, he made various specific and pecuniary bequests.

The fourteenth clause was as follows:—

" It is my further will that the residue of my property, both real and personal, not heretofore devised, shall be sold by my executors, hereafter named, and the proceeds thereof equally divided between my wife, Jane Odom," and certain other parties, being the petitioners therein named ; and, lastly, he appointed the appellants, Naylor & Currie, his executors.

Mrs. Odom afterwards died, and the appellants were appointed her administrators.

At the time of the testator's death, he had made a verbal sale of a tract of land to one Mosely, part of the price of which had been paid by the vendee, and his note was held by testator for the balance.

The executors offered to make Mosely a deed, if he would pay the balance of the purchase-money due, which he refused. The executors then sued for, and recovered the land, and sold it for $960; and Mosely, afterwards, sued them, and recovered $557, the amount of purchase-money, and interest, which he had paid on the land.

The executors having realized the proceeds of the property ordered to be sold by the fourteenth clause, a portion of the legatees therein named, filed this petition for their respective shares of the money so realized.

The court decreed, that they were entitled to distribution in the whole fund, and that the debts, funeral and administration expenses, were chargeable on the money, notes, &c., bequeathed to Mrs. Odom by the first clause; and also, that the proceeds of the land which had been sold to Mosely, should be distributed under the fourteenth clause. From this decree the executors appealed.

*McAllum* and *Farrar*, for appellants,

Filed an elaborate brief, in which they contended, that the debts, funeral and administration expenses, should be charged on the fund bequeathed by the fourteenth clause of the will; and they cited and commented on the following authorities: *Shattuck* v. *Young*, 2 S. & M. 35; 2 Jarman on Wills, 528; 11 Ves. 330; 14

Ib. 364; 15 Ib. 406; 18 Ib. 466; 1 Roper on Legacies, 149, 297; *Fisk & McNeill* v. *McNeill*, 1 How. 545; 2 Lomax Executors, 120, 126, 179; Toller on Executors, 300, 339; Chilton on Probates, 175; *Jones* v. *Irwin's Executors*, 23 Miss. R. 364; *Stewart* v. *Carson*, 1 Desaus. R. 500; 2 Ves. 422; 1 P. Wms, 127; 2 Halst, 68; 7 John. C. R. 263; 1 How. R. 545; 3 Desaus. R. 58; 3 Danl. Chy. Pr. 1628, 1629, 1630, 1631; Willard's Equity, 557; 1 Jarman on Wills, 292; 1 Lomax Executors, 2; Chilton on Probates, 107; 8 Cranch, 66; 7 Curtis R. 743; *Curtis* v. *Blair*, 26 Miss. R. 322; 2 Haywood (N. C.) R. 304; 2 Dev. Eq. R. 488.

*Isham Harrisson, Jr.*, on same side.

The case involves the construction of the first and fourteenth clauses of Jacob Odom's will, hereto attached.

The first, after bequeathing slaves, lands, household and kitchen furniture, to Mrs. Jane Odom, contains the following provision: "I also give and bequeath to my wife Jane, all the moneys, notes, accounts, and evidences of debt, of every description whatever, and choses in action, which shall remain after the payment of all my just debts, and the legacies hereinafter bequeathed." All in lieu of dower.

The fourteenth clause provides, that the residue of testator's property, both real and personal, not before devised, should be sold, and the proceeds equally divided, between his wife Jane, and the other legatees mentioned.

The second, fourth, fifth, and sixth, convey slaves—are specific. The third conveys slaves and money; and the seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth, are pecuniary legacies.

I shall confine my argument to two points, involved in the record. Mr. McCallum's brief contains a full statement of the facts, and a more elaborate discussion of the legal questions.

1st. Ought the first clause to bear the burden of probate, and administration costs and charges?

2d. Do the proceeds of the Mosely land pass, under the fourteenth, or first clause?

It is obvious, that the fourteenth is a residuary clause; and, un-

less the testator expressly charges the payment of these costs and charges on the first clause, it must bear the burden.

I need not cite authority, to show that general and pecuniary legacies abate before specific ones; for, in our view, it is immaterial, whether Mrs. Odom's legacy, under the first clause, is specific or not; because she is a purchaser for value, and the other legatees are mere volunteers. See Hutch. Code, 620, § 48; Toller, 339; 2 Vesey, 417; 1 Desaus. 500; 6 Paige, 298; Willard. Eq. 557; 1 Roper on Leg. 297.

Where the will is silent, or does not clearly indicate what fund shall be charged, the debts have to be borne by the residuum. See 2 Dev. & Bat. Eq. 272; 1 Iredell's Eq. 49; 1 Haywood's Law and Eq. 261; 2 Haywood, 492–493; 2 Dev. Eq. 488; 1 How. 535; Chilton Prob. 189.

There is a marked distinction, between a provision for the payment of legacies and the just debts of the testator, and one embracing administration and probate costs and charges. It is worthy of remark, that the will is silent as to these. It nowhere alludes to them, in any way. Of course, they come out of the residuum. See 3 Danl. Ch. Prac. 1572–1576; Toller, 343–344; 1 P. Wms. 306 (n. 2); 6 Vesey, 345; 20 Pick. 388–389; 9 Paige, 94; 4 Ib. 271; 4 John. Ch. 608; 11 Paige, 49; Adams Eq. 572; Willard Eq. 564.

For argument's sake, suppose that all the legacies in the will are specific; as well those in the fourteenth clause as the others. In a contest between them, as to which should abate, the volunteers, of course, would have to yield. Such is the case here.

We have assumed that the will is silent, as to where the costs and charges of administration shall fall. The correctness of this assumption will be manifest, by the slightest attention to the wording of the first clause.

The provision is, for the payment of all testator's just debts, and the legacies thereinafter bequeathed; the former existing at the date of the will, or the testator's death, the latter, expressly created by the will. Are these costs and charges included in the just debts? Obviously not; for they had no existence then, either actually or constructively. If he intended to have included them, why not do so, in so many words? The legacies are expressly

mentioned, though as much a part of his just debts as these costs and charges. Yet, who will contend that they would have been included in the expression, "my just debts?" It is clear, therefore, that the testator did not provide for these costs and charges, and did not intend to fasten them on the first clause.

This, however, is going farther than the law requires us to do. When we show that it is doubtful, whether the testator had such intention, or rather when we show, that it is not perfectly clear that he had such intention, then the law comes in, and fixes the burden on the residuum.

It is of no avail, that these costs and charges, funeral expenses, &c., are preferred debts. It is not a question as to the dignity of the debts, compared with these; but a question as to the right of appellees, when the will is silent on the subject, and makes no provision for their payment, and the law pays them out of the residuum, to invent an intention for the testator, and bend the law to suit their selfish ends, by paying them out of Mrs. Odom's legacy. That is the question.

But it is contended, that the payment of the legacies, given by the fourteenth clause, is provided for, under the terms "legacies hereinafter bequeathed." A single reflection exposes the impropriety of this construction, viz., Mrs. Jane Odom is a legatee under both clauses. The testator would hardly have taken one of her legacies, and applied it to the payment of the other. Therefore, it is impossible, that he could have meant to provide for the payment of the legacies in the fourteenth clause, by the property given in the first. Besides, the former contained the residue of the property, both real and personal, undisposed of by the thirteen preceding clauses of the will, which property is directed to be sold, and the proceeds to be equally divided between Jane Odom and the other legatees mentioned.

It is further contended, that the poverty of Jacob Odom's relations, who are the objects of his bounty in the fourteenth clause, and the liberal provisions, already made in the will, for his wife Jane, are persuasive facts, to show that he intended the first clause to bear all the burden of administration, and probate costs and charges. If this were true, is it not most remarkable, that he should divide even this remnant (residue) between his wife, already

so liberally provided for, and his poor relations ? Yet this he did. Why did he not give his poor relations all the residue contained in the fourteenth clause ?

We presume it will be allowed, that a sane man may give his property to whom he pleases, provided there is no hindrance in the recipients, save their blood and pecuniary status.

The will, then, being silent, as to the fund which shall pay these administration costs and charges, we submit that the residuary clause must bear the burden; and not only so, but this burden must be confined to the portion going to the other residuary legatees, under the fourteenth clause : Mrs. Odom being a purchaser for value; that even her portion, under this clause, is also exempt.

Suppose this will had but this single clause, which conveyed anything to Mrs. Odom, and those relations, and Mrs. Odom's portion was in lieu of dower, would she not be exempt—the others being mere volunteers ?

2. The proceeds of the sale of the Mosely tract of land, passed under the first, and not under the fourteenth clause of the will.

At the time the will was made, and at the death of the testator, Mosely was in possession, under a contract of purchase, evidenced by a memorandum in writing, signed by Jacob Odom; had paid a part of the purchase-money, and owed the residue. This was a valid sale (26 Miss. R. 322; 7 Curtis Sup. Ct. R. 743), and the fruits of it were intended, by the testator, to pass as a chose in action, under the first clause. This is manifest, and to rule otherwise, would be a palpable subversion of his intention. Besides, it is contended, that the fourteenth clause conveys specific legacies. If this were possible, how can they be enlarged, by accretions from any invalid bequests, or otherwise ?

The legatees are not estopped by the suits, in the Kemper Circuit Court, between the executors and Mosely. They were not parties to those proceedings. And no action on the part of the executors can change the disposition of the property, under the will. The land itself will take the place of the chose in action, which it represented; and, when subsequently sold, the proceeds will pass, as the testator intended they should.

Any other doctrine would make it the will of Currie & Naylor, the executors, and not the will of Jacob Odom.

Currie & Naylor, Exrs. *v.* Murphy et al.

If they can bind the legatees, by those suits in Kemper, they can thwart the intention of the testator, and frustrate and alter the provisions of the will.

Thus I have presented the only two points which I desire to argue, in addition to the argument of Mr. McCallum, to whose brief I refer the court for a more detailed statement of the facts, and elaborate argument of the legal questions involved.

The two points I present, are precisely these: 1st. The will being silent as to the fund which shall pay the administration and probate costs and charges, the residuum must pay them. 2d. The Mosely land money passes under the first, and not under the fourteenth clause of the will.

In conclusion, if we are correct in supposing that the appellees are residuary legatees, under the fourteenth clause, thay have no right to call on the executors, until final settlement. The record shows that the estate was not fully administered, but only in process of administration. 23 Miss. R. 364.

If this be a correct view, and the court shall agree with us, the cause ought to be reversed, and the petition dismissed. Should this be the result, we ask the court to construe the will, and indicate the principles which ought to guide the executors in a settlement with the parties.

A copy of the will is herewith filed. The court below ruled, that the fourteenth clause gave specific legacies, and that the expenses of administration, as well as the debts of the testator, and the legacies created by the will, should all be borne by the first clause; and that the Mosely land purchase, passed under the fourteenth, and not under the first clause. These are the errors and points we hope to reverse on.

*J. S. Hamm*, for appellees,

Filed an elaborate brief, and relied on the following authorities: 1 Lomax Ex'ors, 383, 384, §§ 1, 2, 3; 2 Williams on Ex'ors (3d Am. Ed.), 848, 1250, 1252, 1682, 1683; 1 Roper on Legacies, 192, 199, 217, 363, 1500; *Vannerson* v. *Culbertson*, 10 S. & M. 150; *Burnet* v. *Strong*, 26 Miss. R. 116; 2 S. & M. 60; 27 Miss. R. 828; 25 Ib. 88; 31 Ib. 17; *Parkhurst* v. *Van Cortlandt*, 1 J.

C. R. 273; *Denton* v. *Jackson*, 2 Ib. 332; *Benedict* v. *Lynch*, 1 Ib. 370; 1 Sugd. on Vend. 231, 232, 233.

*George L. Potter*, on same side.

The petitioners are the legatees under the fourteenth clause, except the widow, and the wife of one of the executors. The widow has died, and the executors of her husband have administered on her estate. The answer admits most of the allegations of the petition, but raises questions upon the will, adverse to petitioners. The Probate Court decided in favor of petitioners, and defendants appeal.

The petitioners insist, that by express provision of the will, the debts of testator are to be paid out of the moneys, notes, &c., given by the first clause, to the widow; and also, that funeral charges, expenses of administration, &c., are to be paid out of the same fund. On the contrary, the appellants insist that all these are to be paid out of "the residue" bequeathed by the fourteenth section.

It is wholly unnecessary to raise a dispute as to the particular kind of legacies, given by this will. The main point is to ascertain the intent of the testator; and, as to that, there can be no doubt. If we refer to the fourteenth clause, we find that the whole residue of the estate, not before devised, is to be sold, "and the proceeds thereof (the whole proceeds) equally divided" between the widow and certain other parties, to whom other legacies had also been given. Now, as matter of fact, it is impossible to say that the money provided to be raised, by this fourteenth clause, is charged with the payment of debts, &c. It contains no such charge; but, on the contrary, it declares that the whole proceeds of the sale shall be paid over to the legatees. It is true, in some cases, the courts do, by construction, charge the residuary estate with the payment of debts, &c., because the debts must be paid, and it is assumed that such was the intent of the testator. But where, as in this case, the testator has made other provision for the payment of his debts, there is no ground to charge the residuum, by construction, with payments for which the testator has made other provision. Although residuary legatees, as a general rule, have no right to call upon particular general legatees to abate, "nevertheless, even residuary legacies may have a preference over other

legacies, in consequence of the testator having directed a certain part of his property to be applied in payment of his debts before the rest. As where a woman, after bequeathing different sums of stock, and various other legacies, gave the residue of her funded property, after payment of her debts and legacies, &c., to A.; and the residue of her real and personal estate and effects to others: it was held, that the stock must be first applied in payment of debts and legacies, notwithstanding there might, in consequence, be nothing left for A." 2 Lomax Ex'ors, 126.

In one of the cases cited by Lomax, on this point, it is said to be " always the safest mode of construction, to adhere to the words of the instrument." As to the clause, giving the remainder of the funded property, after payment of debts, &c., the court said : " It is impossible to separate the words, ' after the payment of debts,' from the clause ; they must form part of the disposition. The sense of the expression, ' after payment of the debts and legacies,' must be, what remains after the payment, if anything, and only what remains. It cannot be said, that the fund is given prior to, and independent of, the payment. How is it possible to construe the phrase, ' after payment of debts,' so as to mean the same as without payment at all ? It would be to turn, what is a partial and abridged disposition, into an unqualified and unlimited bequest. Her meaning must have been, to make the funded property, the primary fund, applicable to the debts and legacies."

As to the devise of the general residue, the court said : " It is very true that, in general, the residue means, *ex vi termini*, what may be left, after satisfying the debts, legacies, &c.; but the question is, here, whether, out of two portions of her property, by law equally liable, she has not intended to make one the primary fund; and this, I think, she has done." *Choat* v. *Yeats*, 1 Jac. & Walk. 102.

*Browne* v. *Groombridge*, 4 Madd. R. 495, was a similar case, where it was held, that debts and legacies were charged on a specific gift, and were not to be paid out of the residuary estate.

It is said by Powell: " Where a specific portion of personal estate, is appropriated to charges to which the general personal estate is liable, such fund is not, as in the case of land, subsidiary

Currie & Naylor, Exrs. *v.* Murphy et al.

only, but is primarily applicable." 2 Pow. Dev. 380 (711); *Payne* v. *Wickliffe,* 2 A. K. Marsh. 473 (7).

If we look to the first clause of this will, it is clear, beyond chance for doubt, that the testator intended his debts, &c., should be paid out of the moneys, notes, &c., there referred to. He does not give them all to his wife, but only those "which shall remain after the payment of all my just debts, and the legacies hereinafter bequeathed." As in the case cited by Lomax, the gift is of the residue of the moneys, notes, &c., remaining after payment of debts and legacies.

It will be noted that this provision of the first clause, does not give even the residue of the "moneys, notes," &c., remaining after payment of the debts; but the words are, "after the payment of all my just debts, and the legacies hereinafter bequeathed." These words, unquestionably, include the legacies bestowed in the fourteenth clause. All legacies given, after the first clause, are to be paid in full, and the payment of debts, charges, expenses, &c., is to be made out of the special fund provided for that purpose, to wit, the "moneys, notes," &c.; and out of that fund are also to be paid the pecuniary legacies given from clause seven to thirteen.

The will makes certain specific bequests, of lands, personalty, and cash; gives the residue of the moneys, notes, &c., remaining after payment of debts and legacies; and then gives the proceeds of the residue of the remaining estate, real and personal; and it is clear that the whole proceeds of the latter, were intended to be distributed.

It is plain, therefore, that this bequest of the residue of moneys, notes, &c., is subject to the debts. It is also subject to funeral charges, and expenses of administration. Here is the fund set apart to pay the debts. And what must be paid even before the debts? Why, these expenses and charges. 2 Lomax Exrs. 327–8. These are preferred debts, and must be paid out of the fund, if any, set apart to pay debts. Moreover, the widow was to have only the residue of moneys, notes, &c., remaining after payment of debts and legacies; and it is plain, that the entire fund, to be raised under the fourteenth clause, was intended for distribution, without any abatement; so that, if charges and expenses are thrown on that fund, the intent of the testator is disregarded.

In such a case, it is vain to cite decisions, to show that Mrs. Odom takes as a purchaser, and that, therefore, her share shall not abate. That rule of construction may answer in its place, but must yield to the intent of the testator. It will not do to claim for her, under that rule, more than the testator has given to her; and to say she shall take all the moneys, notes, &c., when the will gives her only what shall remain of them, after paying the debts, &c., out of them.

If we look at the amount which the widow takes, under our construction, we find ample provision has been made for her.

| | |
|---|---:|
| The money reported as on hand, at the death of testator, was | $9,427 50 |
| Notes and accounts, | 10,416 86 |

It is admitted these have been collected, except notes for land, hereafter named.

| | |
|---|---:|
| | $19,844 36 |
| Amount of debts against estate, as shown by executor's accounts, | 2,693 94 |
| Balance moneys, notes, &c., after debts paid, | $17,150 42 |
| The slaves given her, were valued at | 17,715 75 |
| Land given her,—" Home farm,"—appraised at | 9,900 00 |
| | $44,766 17 |

To which add value of furniture, &c.

| | |
|---|---:|
| The personal estate was appraised, at only | $41,956 30 |

The pleadings show the residue of the lands were sold for some . . . . . . . . $3,140 00

Again: the appellants insist that Mrs. Odom is entitled to allowance for $960, price of land, alleged to have been sold by testator, on a credit, to Mosely. From the answer of appellants, it appears, an informal contract of sale had been made, and part of the money paid. They aver that they demanded the balance, and, on the refusal of Mosely to pay, they brought suit, and recovered the lands. Thereupon, Mosely sued, and recovered from them some $500, for principal and interest of what he had paid on the land. The executors then sold the land for $960; and

we claim, the proceeds pass under the fourteenth clause. It is obvious that Mrs. Odom cannot claim, under the first clause, the proceeds of this land, thus sold by the executors. Neither the land, nor the proceeds of that sale, were given under that clause. But they say, she was entitled to what was due on the sale made by the testator. Very well, suppose that sale valid. We do not claim any part of the proceeds of that sale; if it remains a valid debt, let her take it. But they say, some $500 were recovered back by Mosely, as for principal and interest paid testator on the land. True; and that recovery against the executors has adjudicated the fact, that such a debt existed against testator; and it was, of course, payable out of the fund provided for the payment of debts. The truth is, the whole matter is *res judicata.* It has been judicially ascertained, that there was no valid sale of the land by testator to Mosely, and, of course, Mrs. Odom can found no claim upon such supposed sale.

See argument of Mr. Hamm, for appellees, on all the points involved.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree of the Court of Probates, of Kemper county. The proceeding, in its inception, was a petition for distribution, filed by the appellees, who claimed as legatees, under the will of Jacob Odom, deceased.

By the decree, it was held, that the debts of the testator, the funeral charges, and the costs and expenses of administration, were not chargeable upon the residuary fund, but were payable out of the "money, notes, accounts, and evidences of debt," bequeathed to Mrs. Jane Odom, the widow of the testator. This is the first and principal ground of objection to the decree, and necessarily involves a construction of the will of the deceased, the provisions of which are, substantially, as follow, to wit: By the first clause, the testator gave to his wife, Mrs. Jane Odom, a number of slaves, named and particularly described; also, all his household and kitchen furniture of every description, not subsequently and specifically disposed of by the will; likewise, all of his money, notes, accounts, evidences of debt of every description, and choses in action, which should remain after the payment of his debts and the legacies

thereinafter bestowed; and also certain real estate. These bequests and this devise, were declared to be in lieu of the dower of Mrs. Odom.

In the eleven following clauses, specific bequests and pecuniary legacies were given to other persons. And, by the fourteenth and last clause, it was declared that the residue of the testator's property, both real and personal, not thereinbefore devised, should be sold by his executors, and the proceeds thereof equally divided between his wife and certain other persons, to whom, in the preceding clauses of the will, legacies had been given.

It is evident, from this statement of the provisions of the will: 1. That the testator's entire estate was disposed of; and 2. That the residue to which the legatees, named in the fourteenth clause, were entitled, did not embrace any part of the money, notes, accounts, evidences of debt, and choses in action, of which the testator was possessed at the time of his death, as these were bequeathed to Mrs. Odom by the first clause, and the residuum, by the express declaration of the testator, was to consist alone, of the proceeds of the sale of the real and personal property, not previously devised or bequeathed.

Where the testator has not directed, that a particular part of his estate shall be applied to the payment of the debts, the rule is well settled that the residuary legatees have no right to call upon particular general legatees to abate. The whole personal estate, not specifically bequeathed, must be exhausted before those legatees can be compelled to contribute anything out of their bequest. 2 Lomax on Ex'ors, 126. But where, in consequence of the testator having directed a certain part of his estate to be applied in payment of his debts before the rest, residuary legacies may have a preference over other legacies. *Browne* v. *Groombridge*, 4 Madd. R. 495; *Choat* v. *Yeats*, 1 Jacob & Walker, 102.

Conceding, for the present, that the will contains no direction to apply that particular part of the estate to the payment of the debts, it is clear that the debts, funeral expenses, &c., were properly chargeable upon the residuum, and that no part of the money, notes, &c., bequeathed to Mrs. Odom, should have been appropriated to those purposes.

And if there be, in point of fact, no such direction in the will,

there is another consideration, which in the present case, fortifies the rule that the whole of the personal estate must be exhausted, before the particular general legatees can be obliged to contribute anything from their bequest.

The property bequeathed in the first clause, was given expressly in lieu of the dower of the legatee. Mrs. Odom is, hence, to be regarded as a purchaser for a valuable consideration; and, although the bequest under that clause, so far as it respects the money, notes, evidences of debt, &c., is not specific, it is nevertheless entitled to preference of payment over the other general legacies, which were mere bounties. *Burridge* v. *Bradyl*, 1 Peer. Will, 127; *Blower* v. *Morret*, 2 Vesey, 420. Much more is it entitled to preference of payment over those given to the residuary legatees.

But it is insisted, that the will contains an explicit declaration of the testator's intention, that the debts shall be paid and the expenses defrayed, out of the money, notes, accounts, and evidences of debt owned by him at the time of his death.

In the construction of wills, the chief object is to ascertain the true intention of the testator. And it is always the safest mode of construction, to adhere to the words of the instrument, without considering either circumstances arising *aliunde,* or calculations that may be made as to the amount of the property, or the consequences which may flow from any particular construction. What then has the testator said? In the first clause, after giving to Mrs. Odom certain slaves, his household and kitchen furniture, he says: "I also give and bequeath to my wife Jane, all the money, notes, accounts, and evidences of debt of every description whatever, and *choses* in action, which shall remain after the payment of my just debts and the legacies hereinafter bequeathed." If the clause had terminated with the words "*choses* in action," no doubt could be entertained as to the intention of the testator. Standing in the attitude of a purchaser for a valuable consideration, Mrs. Odom would have been entitled to the whole of "the money, notes, &c.," of which the testator should die possessed. And that bequest would have been entitled to preference of payment over not only the residuary legacies, but also over the general and pecuniary legacies given by the subsequent clauses of the will. But it is impossible to separate the words, "which shall remain after the payment of

my just debts, and the legacies hereinafter bequeathed," from the preceding part of the clause.    And, looking at the whole clause, it is impossible to doubt, that it was the testator's intention to give to Mrs. Odom the residue of the money, notes, &c., which would remain after paying the debts and the particular general legacies given in the succeeding portions of the will; and, as no part of the money, or of the avails of the notes, evidences of debt, &c., could go into the residuum, it seems a very clear indication of the testator's intention, that the debts and pecuniary legacies should be paid, at least in part, from that source.

But under the decree, the funeral charges, and the costs and expenses of administration, were also to be paid out of the money, notes, &c.    This direction, in the decree, proceeds upon the supposition, that the funeral expenses and the costs of administration, were debts of the testator; or, as intimated in the decree itself, that the bequests to the residuary legatees were entitled to preference of payment over the legacy given to Mrs. Odom.    In either point of view, the decree, in this respect, is clearly erroneous.    The funeral expenses, and the costs and charges incident to the administration of the estate, upon no principle, can be regarded as the testator's debts.    It is very true, that the whole assets of the estate were bound for them; and that they were entitled to be first paid. But it is manifest, that that fact does not constitute the slightest foundation for the assumption, that the widow, who stood in the attitude of a purchaser for value, was obliged to contribute any portion of her bequest towards their payment, and that too before the residuary fund was exhausted, and the other general and pecuniary legacies were required to abate.    As the will contains no direction that any particular part of the estate shall be applied to the payment of the funeral charges, and the costs and expenses of administration, it does not admit of doubt that they are to be defrayed out of the residuum, and unless it should prove insufficient, that none of the particular general legacies are obliged to abate.

It appears, from the record, that previous to the execution of the will, the testator had made a verbal sale, of a tract of land to one Mosely, and was bound to make titles for the same, upon payment of the purchase-money.    That Mosely had paid part, leaving a considerable balance unpaid and due, when the testator died.    The

appellants, after having qualified as the executors of the will, offered to execute a deed for the land to Mosely, if he would pay the remainder of the purchase-money, which he refused, or failed to do. Whereupon they brought suit for the land, and recovered possession of it. Subsequently, the executors sold the land as part of the testator's real estate, which was directed to be sold by the fourteenth clause of the will. The land was sold for $960. Mosely sued the executors for the amount of money paid by him to the testator, as a part of the price of the land, and recovered judgment for $557.88, which was paid by the executors.

Upon these facts it was adjudged, that the proceeds of the sale of the land did not pass under the first clause of the will, as part of the bequest to Mrs. Odom; but went to the residuary legatees; and was ordered to be distributed accordingly.

The appellants insist, that the proceeds of the Mosely land, or at least the amount of the purchase-money, unpaid when the testator died, passed to the legatee, under the first clause; and assign, for error, this direction in the decree.

The claim or debt against Mosely, without doubt, passed under the first clause of the will; therefore, if any money had been realized upon that claim, it would have followed the direction given to the money in possession, and the *choses* in action, by that clause. But no money, in point of fact, was realized upon that claim; and we presume, for the reason, it was invalid. No effort was made, by suit, to collect it. The appellants abandoned the claim, but sued for, and recovered, the land. Under these circumstances, it is impossible to consider the claim as constituting a lien upon the land; and hence, that Mrs. Odom, or her representative, would have a right to payment out of the proceeds of the sale.

The acts of the appellants, have precluded them from insisting upon the validity of the sale, from the testator to Mosely, as well as the validity of the claim. If the claim was a valid one, and Mosely was solvent, they were in default. Under these circumstances, it would be going a great distance too far, to hold that the general bequest by the testator of his choses in action, was tantamount to a devise of the land in question, to be converted into money, for the benefit of the legatee.

And it is manifest, that it is only upon such an assumption, that

the exception to the decree, in this respect, is entitled to consideration.

For the error before pointed out, we reverse the decree, and remand the cause for farther proceedings.