McGRANE, Appellant, v. WALSH, et al, Respondents.

(239 N. W. 240.)

(File No. 6917.   Opinion filed December 1, 1931.)

*John W. Addie,* of Armour, for Appellant.
*James R. Bandy,* of Armour, for Respondent.

RUDOLPH, J. This appeal involves objections filed on behalf of Mayme McGrane, the appellant, to the final report of the executor of the estate of John J. Walsh, deceased, and involves the construction of the will of Philip Walsh, hereinafter set out. The material facts, which are not in dispute, are as follows: Philip Walsh died in Ireland on the 24th day of April, 1912, leaving a last will and testament. John J. Walsh died in Douglas county, S. D., on September 23, 1922, and left surviving him Paul F. Walsh, John J. Walsh, Jr., Philip B. Walsh, Edward M. Walsh, Adrian W. Walsh, and Letitia A. Walsh, children. John J. Walsh also had a daughter Mary Walsh, who died intestate June 11, 1917, and it is the rights of the heirs of Mary Walsh, under the terms of the will of Philip Walsh, that are in dispute.

The will of Philip Walsh is as follows:

"I, Philip Walsh of Ballinurra in the county of Tipperary farmer hereby make this my last will I give devise and bequeath all of the property of which I may die possessed or entitled to to my cousin Kate Hogan of Ballinurra Spinster subject as hereinafter set out and I appoint my said cousin Kate Hogan and Patrick Toole of Poulmaleen farmer the executors of this my last will I desire that said Kate Hogan shall continue to maintain and work the farm at Ballinurra as heretofore worked by my late brother James and myself and that she raise and pay thereout within twelve months after my death the sum of two hundred pounds which I direct shall be forwarded to my brother John now residing in U. S. A. or to his representatives (if dead) said sum to be applied in equal shares for the benefit of my Nephew Philip and my niece Mary children of said John Walsh provided they are then living and in case they shall be dead for the benefit in equal shares share and share alike of whatever children of my said brother John who may be surviving at the time I direct that in case of my said brother only shall be surviving that said sum of £200 shall be applied for his benefit absolutely for the purpose of raising said sum of two hundred pounds I desire that the said Kate Hogan shall sell cattle and release the residue of the assets of my late brother James to which I am entitled but that she shall not sell the farm, I further direct that said Kate Hogan shall cause an anniversary low Mass to be celebrated, etc. * * *

"Dated this 17th day of April, 1912. (twelve)

"[Signed]    Philip Walsh

"(Duly Witnessed)

. "I hereby make this codicil to my last will I withdraw the restriction on the sale of the farm and I direct that said Kate Hogan may sell same if she finds she cannot conveniently manage it but if same is sold by her I direct that she shall pay one hundred pounds additional to my brother John or his representatives so named or indicated in my will annexed hereto.

"Dated 20th April 1912.

"Philip Walsh"

The £200 legacy provided for under the terms of the will of Philip Walsh was not forwarded to the administrator of the estate of John J. Walsh, deceased, until in December, 1926. Philip, the nephew, who was then living, was paid one-half of the £200, and in this proceeding, Mayme McGrane, the plaintiff and appellant, who is conceded to be the only heir at law of Mary Walsh, is seeking to recover the balance of the £200 legacy, as the heir of Mary.

The trial court determined that the defendants, Paul F. Walsh, John J. Walsh, Jr., Philip B. Walsh, Edward M. Walsh, Adrian W. Walsh, and Letitia A. Walsh, surviving children of John J. Walsh, deceased, are, as a matter of law, entitled to the remaining portion of the £200 not paid to Philip. This appeal is from that determination of the trial court.

The appellant contends that the right to the £100 provided in said will of Philip to be forwarded to his brother John, and to be applied for the benefit of Mary, became vested in Mary, in any event, at the end of the twelve-month period, provided in the will within which Kate was to raise and pay out the money, and, having vested in Mary, she being alive at the end of the twelve-. month period, descended to the heirs of Mary.

It is the contention of the respondent, which contention was adopted by the trial court, that the legacy provided for Mary did not vest in Mary at the time of the death of the testator, for the reason that the will provided that the money for Mary, when raised by Kate, should be forwarded to the testator's brother John, or to his representative, and by him applied for the benefit of Mary,

provided she is "then living." That "then living" referred to the time when the money was to be applied, and therefore the vesting of the legacy was deferred until such time as it was received by John or his representative, and the application made. The respondent further contends that the right to the legacy did not vest in Mary at the end of the twelve-month period after the death of Philip for the reason that the testator, in providing that Kate "raise and pay thereout within 12 months after my death .the sum of £200," made this provision in the form of desire only, and, it being only a desire on the part of the testator, there was no duty upon Kate, and no right to this money vested until such time as the money was actually raised by Kate and forwarded to John. That the money was not actually raised and forwarded by Kate until some years after Mary was dead, and therefore Mary never acquired any right to the money. We are unable to agree with these contentions of the respondent.

■ ■ It will be noted in the first instance that the testator gave all of his property to his cousin Kate. This, however, was not an absolute devise, but was "subject as hereinafter set out"; that is, subject, in part, to the £200 provided for Mary and Philip. It appears from the fact that the gift to Kate was made subject to this £200 legacy, and from the context of the will, as a whole, to be the manifest intention of the testator, and it is not seriously urged otherwise, that, at some time, either Mary or the other children of John should have an absolute right to the legacy therein provided. Whether the testator intended to vest the right to this legacy as of the time of his death, we do not now decide, but it is our opinion that, when the testator provided, "I desire that said Kate Hogan shall continue to maintain and work the farm * * * and that she raise and pay thereout within twelve months after my death the sum of two hundred pounds which I direct shall be forwarded to my brother John now residing in U. S. A. or to his representatives (if dead) said sum to be applied in equal shares for the benefit of my Nephew Philip and my niece Mary children of said John Walsh provided they are then living"—he clearly expressed an intention that the right to this legacy should vest, in any event, at the end of the twelve-month period.

■ It is a cardinal rule of construction of every will that the intention of the testator, so far as it can be determined and

legally carried out, must govern. Section 643, Rev. Code 1919. That it was the intention of the testator to vest at some time, either in Mary or the other children of John, the right to this £200 legacy cannot be seriously disputed. To now say because the testator used the term "desire" when he fixed the time within which the money should be raised to pay the legacy, that therefore Kate could raise the money or not as she saw fit, and thereby defeat the expressed intention of the testator is not logical or reasonable. No general rule can be laid down as to the construction of such words as "desire" when used in a will, but the meaning must be determined from the manner in which such words are used in connection with other phraseology of the will. Post v. Moore, 181 N. Y. 15, 73 N. E. 482, 2 Ann. Cas. 591, 106 Am. St. Rep. 510 and note, 40 Cyc. 1734. We are of the opinion that, in order to give effect to the intention of the testator, we must hold that when he expressed his desire that Kate raise and pay thereout £200 within twelve months after his death, the word "desire" cannot be construed as a mere precatory word, but, by his use thereof, there devolved upon Kate an imperative duty to raise and pay out the money within the twelve months. This being an imperative duty upon Kate, the right to the legacy became vested, in any event, at the end of the twelve-month period. Mary being alive at the end of the twelve-month period, the right to the legacy became vested in her. No useful purpose would be served by extending this discussion, because the construction of every will must depend upon the context of the particular instrument.

The judgment appealed from is reversed, with directions to enter judgment in favor of the plaintiff.

POLLEY, P. J., and CAMPBELL, ROBERTS, and WARREN, JJ., concur.