## In Re HOISINGTON'S ESTATE

(291 N. W. 921.)

(File No. 8249. Opinion filed May 4, 1940.)

**Sargent & Westphal,** of Gettysburg, for Appellant.
**K. J. Morgan,** of Gettysburg, for Respondent.

SMITH, P.J. This appeal is brought here by the beneficiary of the residuary clause of the last will and testament of Lizzie A. Hoisington, deceased, to test the propriety of the learned trial court's interpretation of a specific devise of real property.

Bryson's Addition in the City of Gettysburg is located just north of Platt's Addition in that City and there is no street or alley between the two additions. The lots along the south side of Bryson's Addition are of odd size, namely, $18\frac{4}{17}$ feet, and the lots along the north side of Platt's Addition are also of odd size, namely, $31\frac{13}{17}$ feet. The deceased owned a home facing west on main street in Gettysburg, and, the plot of ground upon which it is situated being 50x140 feet in dimensions, is made up of one of these irregular lots from each of the two additions. That is to say, the north $18\frac{4}{17}$ feet of said plot is Lot 6, Block 34 of Bryson's Addition.

and the south $31\frac{13}{17}$ feet of the plot is described as Lot 6, Block 69 of Platt's Addition. On this plot of ground is located a dwelling, part of which is upon both lots, and an outside toilet, a tool house, a cistern, and a chicken house, which are all located on the lot forming the south part of the plot. The entrance ways at the front and back of the house are also located on the south lot. The division line between the two lots passes through the living room and dining room downstairs, and a bed room upstairs, leaving five feet of these rooms and five feet of the porch on the north lot. There are no other improvements on the north lot except a sidewalk and part of a fence which surrounds the entire property.

Lizzie Hoisington had purchased this property as a whole many years ago and had occupied the same as her home up until the time of her death on the 14th day of September, 1936.

The significant portions of the will under which the opposing parties claim, respectively, read as follows:

"Third—I give, devise and bequeath Lot Six (6) of Block Thirty-four (34) of Bryson's Addition to Gettysburg, Potter County, South Dakota, together with all improvements, hereditaments and appurtenances thereto attached or any wise appertaining, to Louisa A. Spencer, of Gettysburg, South Dakota, her heirs and assigns forever, it being my expressed intention to hereby transfer to the said Louisa A. Spencer a fee simple title in said described real estate.

"Fourth—All of the rest, residue and remainder of my property real or personal, of every kind or description and wherever situated, not hereinbefore disposed of, I give, devise and bequeath to my grandson, Wallace Hoisington, subject to the conditions that no deliverey shall be made him of any part thereof until he shall have attained his twenty-first birthday, provided, that any and all income therefrom may until then be annually appropriated to the use of said Wallace Hoisington, as the Executor hereof, may in his discretion deem for the best."

Appellant and respondent are unrelated to each other.

The learned circuit court interpreted the foregoing third clause of the will as expressing an intention to devise the home and plot of ground upon which it stood to Louisa Spencer, and entered findings, conclusions and judgment accordingly. The appeal is from the judgment and from an order overruling a motion for a new trial.

The first challenge of the assignments of error is directed at the admission of extrinsic evidence as an aid to interpretation. The extrinsic evidence heard by the court permits classification. In one class we place evidence which explained the situation of the property in question and tended to indicate the knowledge of the testatrix with reference to that property at the time she made her will. In the other class we deal with instructions of the testatrix to her counsel at the time her original will was drafted. We find no difficulty in dealing with either of these contentions.

 The first class of evidence was admissible for the purpose of placing the court in the situation of the testatrix at the time the will was made. Wigmore on Evidence, § 2470.

 The second class of evidence was as clearly inadmissible. The law is otherwise in some jurisdictions, but with us declarations of the testator dealing with his intentions are clearly proscribed by statute:

"56.0302 Will excludes all oral declarations. In case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations."

"56.0324 Imperfect description corrected without evidence of declarations. When applying a will it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected if the error appears from the context of the will, or from extrinsic evidence; but evidence of the declarations of the testator as to his intention cannot be received."

The command of these statutes is plain and should not

be avoided by construction. Prejudice to appellant by the admission of these declarations of intention does not appear from the record. That the findings of the trial court were based thereon is not conclusively shown. For reasons frequently announced it is presumed that the court disregarded this inadmissible evidence. And see Rock et al. v. Zimmermann et al., 25 S. D. 237, 126 N. W. 265.

Thus we reach the real contention of the appellant. It may be stated thus: That under the guise of interpreting the will, the learned trial court actually reformed that instrument so as to conform its third paragraph to an intention which the testatrix did not express therein.

■■ The general principle, which precludes a court from ascribing to a testator an intention his will does not express, will be conceded. Whether SDC 56.0324, supra, was intended to relax that general principle we think we need not now decide. That these sections and the common law charge a court with the duty to give effect to the intention of the testator as revealed by the expressions of the will when it is read in the light, and with the aid, of surrounding circumstances, is hardly open to debate. Wigmore on Evidence, supra; 94 A.L.R. 44. It is in the application of these accepted principles, rather than in their statement, that differences of opinion arise. Cf. annotation 94 A.L.R. 29. Appellant reads a precise and express devise of a single lot from the words of the third provision of this will. When light is limited to that afforded by the contents of the will, no reason can be discovered for questioning the conclusion thus reached. When so read, there appears what seems but an unduly expansive devise of a single improved lot or tract of real property. However, that which seems so certain when attention is confined to the will, becomes obscure, imperfect and insensible when applied to the external objects with which it purports to deal. Application of the provision brings to light not a single improved lot, but a plot of ground improved as a residence property with the lot described constituting but one of its integral parts. The heart of the unit, the dwelling house, straddles the line between the two lots. The appurtenances used in connection therewith, viz.,

the cistern, outside toilet, tool house, chicken house, and entrance walks, are all on the south lot of the plot. The entrances to the house are all on the south lot. The dividing line between the two lots cuts through the most vital parts of a home, viz., the living room, the dining room, bed room and porch, and leaves Lot 6, Block 34, Bryson's Addition, with but a five foot fragment of those rooms, and no appurtenances. The absurdity of a result which severs a home into two useless parts, and at the same time operates to transfer those respective parts to unrelated, disconnected persons, is manifest. Reason and authority demands that such a result should be avoided if the words used will support a different interpretation. Wigram's Third Proposition, Wigram's Extrinsic Evidence in Aid of the Interpretation of Wills, 5th edition.

We have concluded that the admittedly imperfect expressions of the testatrix reveal a different intention. Her words reach beyond Lot 6, Block 34, Bryson's Addition. Attempt to confine them to that lot is repulsed by the fact that the testatrix has said that she intended to devise more than one improvement, more than one appurtenance, for she said "together with **all** improvements, hereditaments, and appurtenances thereto attached or any wise appertaining." Lot 6, Block 34, Bryson's Addition, includes no more than a fragment of a single improvement, and no appurtenances to that improvement. If the north lot constituted a separate and distinct piece of real property, under familiar principles the false portion of the description could be rejected. 69 C. J. 83. Such is not our case. The lot specifically described, and another lot, have been fused into a unit by a common set of improvements. The words of the testatrix lay hold of integral parts of that unit. We think they reveal and express an intention to devise the unit, viz., the home of the testatrix, and we so hold.

Under a similar set of facts, the Wisconsin Court included an entire apartment building within a devise which only described a portion of the plot it improved. In re Stack's Will (Mathiowetz v. Stack et al.), 214 Wis. 98, 251 N. W. 470, 92 A.L.R. 150.

Finding no prejudicial error in the record, the judgment and order of the trial court are affirmed.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

WARREN, J. (dissenting) Appellant strenuously urges that the court is prohibited from reading into the will by aid of extrinsic evidence matter foreign thereto which is patently erroneous as to the devisees or the property devised and that the court ought not to make the testator's will the instrument itself being clear and concise both as to its terms and as to the disposition of her property. Further that one cannot point out any proposition upon the face of the instrument showing any defect in form or thought. That the rule of law permitting the admission of extrinsic evidence to clarify on the ground of a latent ambiguity does not apply.

I do not believe that there is any uncertainty in the wording of the two clauses in the will. The meaning in the third clause leaves no room for doubt that she intended to give to the devisee therein named Lot Six of Block Thirty-Four of Bryson's Addition no more no less. No reference therein is made to a home or a house. The entire clause is closed up by "* * * hereby transfer to said Louisa A. Spencer a fee simple title in said described real estate." The description, according to the record before us is definite and certain. Under well established authorities to add anything further to this clause by way of extrinsic testimony would mean the rewriting of the clause, making a new will for the testatrix and making an oral will instead of one in writing as provided for by § 613, R. C. 1919 [SDC 56.0210]. The admission of extrinsic testimony was quite thoroughly covered by this Court in Rock et al. v. Zimmermann, 25 S. D. 237, 126 N. W. 265. I shall not attempt to quote from this decision but the reading of it leaves no room for doubt that under the various Code sections relating to the making of a will and the interpretation thereof, parol testimony, such as offered in the record in this case, cannot be admitted upon any theory.

I believe in the wholesomeness of the rule, supported by abundant authority, which reads as follows: "* * * the

rule that direct evidence to prove the intention of the testator should be excluded, unless there appears to be a latent ambiguity, should be applied with some strictness. In the absence of such latent ambiguity the declarations of the testator cannot be proved by the scrivener who drew the will to show that the will does not accord with the instructions given." Jones on Evidence, 3d Ed., § 480, p. 744.

Extrinsic evidence as to the intention of the testator, whether circumstantial or otherwise, is admissible only when there is ambiguity or uncertainty upon the face of the will. The intentions of the testator must be expressed in conformity with the law and must be gathered from the intention expressed in the will. Such evidence cannot be resorted to for the purpose of showing actual intention in the mind of the testator different from the intention expressed by the context of the will and clearly the testimony of the scrivener is not at all in harmony with what the testatrix said above her signature in writing. In re Hurley's Estate, 61 S. D. 233, 248 N. W. 194, 94 A.L.R. 13; see note page 26; Napier v. Little et al., 137 Ga. 242, 73 S. E. 3, 38 L.R.A., N.S., 91, Ann. Cas. 1913A, 1013.

I do not believe that the will involved is so indefinite, uncertain, doubtful or ambiguous that it can be said that it is manifest that she desired to give the respondent the two lots containing the home from the language of the will. I prefer to follow and adhere to the rule that the intentions of the testatrix, which courts will carry into effect, is that expressed by the language of the will and that it will not be permitted to import into the will an intention different from that expressed by its language, however clearly such different intention may be made to appear. "The intention of the testator as expressed by the will being clear and unambiguous, the law must give effect thereto, and it is not material whether the intention thus definitely expressed in the will duly executed does or does not accord with the intention which may have existed in the mind of the testator, nor is it material that testator, subsequent to the execution of the will, may have entertained the opinion in his own mind that he had expressed a different intention in the will." In re

Hurley's Estate, supra [61 S. D. 233, 248 N. W. 196, 94 A.L. R. 13]; Hill-Taylor Co. v. Shade et al., 57 S. D. 357, 232 N. W. 89; In re Walsh's Estate, 59 S. D. 277, 239 N. W. 240; In re Gray's Estate, 27 N. D. 417, 146 N. W. 722, L.R.A. 1917A, 611; In re Griffiths' Will, 172 Wis. 630, 179 N. W. 768; Currie and Naylor Executors of Jacob Odom v. P. R. Murphy et al., 35 Miss. 473; Lillibridge's Estate, 221 Pa. 5, 69 A. 1121, 128 Am. St. Rep. 723; In re Young's Estate, 123 Cal. 337, 55 P. 1011; Succession of Henry, 158 La. 516, 104 So. 310; Wooding v. Williams, 110 Neb. 651, 194 N. W. 791.

The testatrix was conscious of the fact that she had other real property than that mentioned in the third clause when in the residuary or fourth clause she made mention of the remainder of her property real or personal. To me it shows clearly that the testatrix was intending by such clause to dispose of the balance of her real estate to her grandson, Wallace Hoisington, pursuant to § 658 R. C. 1919 [SDC 56.0316]. Rock et al. v. Zimmermann et al., supra; In re Kahoutek's Estate, 39 N. D. 215, 166 N. W. 816.

It seems to be a well settled rule of law that it is not within the province of the court to say in examining the terms of a will what the testatrix intended but what is the meaning to be given to the language that she used. Courts, therefore, adopted the rule that in the construction of a will the court must stand by the words used therein and, therefore, it is not what the testatrix meant but what her words mean. The testatrix's intention must, therefore, be discovered primarily from the language of the will and you cannot extract the testatrix's intention from outside of the four corners of the will.

The legal description in the third paragraph is clear and concise. The draftsman was skilled in the understanding of words as he was a lawyer of experience and, therefore, undoubtedly used the phrase, "together with all improvements, hereditaments and appurtenances thereto attached or otherwise appertaining," advisedly and knowingly and did not mean to convey the adjoining lot. I can well imagine that if he had included the adjoining lot by its legal description in said paragraph the same stock phrase would have been

used. I, therefore, attach little important to this phraseology and do not believe that a court ought to, by virtue of such language, say that the testatrix intended to part with more property than that contained in the legal description. To say by the using of the word "appurtenance" in the will that the testatrix meant to devise other and further property than that embraced within the legal description, in my mind amounts to writing a will and one might say to include property which the testatrix did not wish to dispose of in this clause but did dispose of in the residuary clause and amounts to making a will, at least, through interpretation. It may be said that justice requires a court to go that far but justice might require that we should not deprive the residuary legatee from the property that has been devised to him by the testatrix in the residuary clause.

I am strongly impressed that the legal description used by the testatrix contains no error but is a perfect description which description, undoubtedly, was obtained from the survey of the property and is, therefore, in the same class as though the property had been described by metes and bounds and even though the word "appurtenance" is used it could not bring in other property beyond the property line of the survey in obtaining the legal description. It seems to be the general holding that where the term "appurtenance," as used in conveyance, passes nothing but the land, and such things as belong thereto, and are part of the realty. Therefore, when a conveyance is of a piece of land, defined by boundaries with "appurtenances" other land not included in the boundaries will not pass as appurtenant to the grant. All that can be claimed as embraced in the word "appurtenance" are easements and servitudes necessary to the enjoyment of the land conveyed. Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 144, 25 S. W. 932, 24 L. R. A. 507; Hoboken Land & Improvement Co. v. Kerrigan, 31 N.J. L. 13-16, 2 Vroom 13-16.

That the intent of the testatrix must be determined from the language of the will seems to be the general rule. A very interesting case in this connectoin is that of Brown

v. Loomis, 119 Cal. App. 195, 6 P.2d 319, relating to descriptions of real property devised to one of the devisees.

It is not necessary in the instant case to create and give additional property by implication, to sustain this will, which the trial court by its decree attempted to accomplish. Estates by implication are not favored in law and it is not necessary in this case to carry out by implication the intent of the testatrix to prevent the will from failure as it is valid in every way on its face. Courts will not imply a devise. See, Allen et al, v. Morrill et al., 129 Cal. App. 347, 18 P.2d 773, and citations therein quoted from.

In re Kline's Estate, 138 Cal. App. 514, 32 P.2d 677-680, the court delved into the intentions of a testator and what he may have had in mind as follows:

"It may be that the testator probably thought that what he had in mind was to create that which in the law constituted a charitable trust; but the estate of the testator is bound by the specific and express directions contained in the testator's will, rather than by inconsistent references or 'side remarks' interspersed therein. Taylor v. Keep, 2 Ill. App. [368], 381; In re Sutro's Estate, 155 Cal.. [727], 730, 102 P. 920; Estate of Walkerly, 108 Cal. 627, 41 P. 772, 49 Am. St. Rep. 97; In re Vance's Estate, 118 Cal. App. 163, 4 P.2d 977.

"In Estate of Doane, 190 Cal. 412, 415, 213 P. 53, 54, it is said: 'The decedent having made an invalid provision in clear, unequivocal language, the courts are without power to alter that language to express what may have been in the testator's mind but was not attempted to be expressed by him, however beneficient such unexpressed intent may have been. "It may be said of all wills, that the testator's intent is to make a valid disposition of his property. * * * But a court is not therefore authorized to modify or vary the plain language of the testator, and thus create a new and valid will for him, even if it were certain that the testator would have adopted the interpretation of the court, had he known his own attempt was invalid." Estate of Walkerly, supra, 108 Cal. 627, 659, 41 P. 772, 780, 49 Am. St. Rep. 97'."

The language that follows the legal description in the instant case and in which the word "appurtenance" appears can well be said to be a "side remark" and I do not feel that we should add additional real property to the accurate legal description contained in the will.

The intent of the testatrix must be gathered from the language of the will and parol evidence of the testatrix's intent separate and apart therefrom is not admissible. Dahmer v. Wensler, 350 Ill. 23, 182 N. E. 799, 94 A.L.R. 1, and see note at page 65 thereof relating to correcting mistakes or supplying omissions holding that it is well settled that equity will not reform a will because of mistakes or omissions and reformation will not be granted under the guise of construction. 28 R. C. L. Wills, § 164. The court erred in permitting the scrivener or draftsman to testify as to his own and testatrix's intention as it was incompetent to show an intention on the part of the testatrix different from that expressed in the will. Napier v. Little, supra, and see note in 38 L. R. A., N. S., 91. Defreese v. Lake et al., 109 Mich. 415, 67 N. W. 505, 32 L. R. A. 744, 63 Am. St. Rep. 584.

Parol evidence is not admissible to show the intention of a grantor as to the character of an instrument which is plain and unambiguous so that its meaning can be ascertained from reading it. Cox v. Reed, 113 Miss. 488, 74 So. 330, 11 A. L. R. 5.

For all of the foregoing reasons I believe the order and judgment appealed from should be reversed.