SUMNER and another, Respondents, vs. NEWTON, Trustee, Appellant.

*September 24 — October 13, 1885.*

*Wills: Termination of trust for maintenance during life of beneficiary: Release: Jurisdiction of county court.*

If the county court can lawfully terminate a testamentary trust for the support and maintenance of a person during life, while such beneficiary is still living (a question not determined), such a trust should not be so terminated without a full hearing in some proceeding to which all persons interested in the trust fund are parties, nor without security being given that the beneficiary shall never want for maintenance, if the trust fund would have been sufficient therefor. If a release executed by the beneficiary is the basis of the application for the termination of the trust, the court should investigate the circumstances under which the release was executed, the capacity of the beneficiary, and whether the execution of the release was a judicious and discreet act. Whether any of the foregoing requirements might be dispensed with if the trustee consented to the termination of the trust, not determined.

APPEAL from the Circuit Court for *Dodge* County.

Maranda Goodal died November 17, 1871, leaving a will in and by which she devised and bequeathed all her estate, real and personal, to the appellant, *Thomas L. Newton, in trust,* to pay her debts; to erect a monument to her deceased husband; to pay certain legacies; to support and maintain her brother, Cyprian Chandler, and his daughter

Mary G. Chandler, during their natural lives, or the life of either of them; and to pay over the residue of the estate remaining in his hands, one half thereof on the death of either Cyprian or Mary, and the remaining half on the death of the other, to the petitioners, *Sarah Sumner* and *Harriett Wellington*, who are also daughters of said Cyprian. *Newton* is also named as executor, and the will confers upon him full power to sell the property so devised and bequeathed to him in trust, whether real or personal; to convert the same into money; to invest the proceeds; and to change such investment in his discretion. The will was duly admitted to probate by the Dodge county court.

In July, 1872, Mary G. Chandler intermarried with one Fox, and they reside in the state of Connecticut. Her husband has maintained her since their marriage, and is apparently of sufficient ability to continue to do so. Cyprian Chandler died in February, 1884. The trusts created by the will have all been executed except that in favor of Mary, now Mrs. Fox. The proceeds of the estate now in the hands of *Newton* as a trust fund is $2,460.21, as alleged by the petitioners and admitted by the trustee.

The manner in which the trust in favor of Cyprian and Mary should be executed is thus directed in the will: "The said trustee or trustees for the time being of my said will and estate are to support said Cyprian Chandler and Mary G. Chandler generously, and not niggardly, and in a manner suitable to their condition in life, giving them that kind care and attention which their dependent condition demands; and procuring them decent homes in good respectable families, where they will receive kind treatment, and, if proper and feasible, and not hurtful or too expensive, in such place or places as they may prefer; furnishing them with suitable and becoming clothing, with such moneys as they may wish, in moderate sums, for pocket money, unless it shall appear that it is used, or to be used, in a manner

hurtful or not beneficial to said *cestuis que trust.* I authorize my trustee or trustees for the time being of my will and estate, in case the income of said sales or investments shall prove insufficient for any of the purposes aforesaid, to draw on the principal, but not otherwise." It is also directed therein that, after the death of one of the beneficiaries, Cyprian or Mary, and payment to the residuary legatees of one half the estate, the remainder of said investment and estate is "to be kept intact, and the income thereof used during the natural life of the survivor of said *cestuis que trust* for his or her support and maintenance during his or her natural life." The will also allows *Newton* $100 per-annum for his services in executing the trusts imposed upon him during the existence thereof. If any other trustee should be appointed, the will provides that his compensation shall be fixed by the Dodge county circuit or county court.

June 10, 1884, the residuary legatees, *Mrs. Sumner* and *Mrs. Wellington,* presented their petition to the Dodge county court, praying that *Newton* be required to file his account as trustee for settlement, and to show cause why the balance of funds of said estate in his hands should not be paid to the petitioners, and the estate closed up and settled. No claim is made that he has not properly managed the estate, but the petition is based upon the following instrument purporting to be executed by Mrs. Fox under her seal, and duly attested and acknowledged:

· · "Know all men by these presents, that I, Mary G. Fox, of Woodstock, in the county of Windham and state of Connecticut, formerly Mary G. Chandler, of the town of Trenton, county of Dodge, and state of Wisconsin, and one of the beneficiaries named in the will of Maranda Goodal, late of said county of Dodge, deceased, for and in consideration of the sum of one dollar, to me in hand paid, and for divers other good and valuable considerations, do, by these presents, for myself, my heirs, executors, and administrators,

and assigns, remise, release, and disclaim all legacies, gifts, and bequests given to me or for me, and all provisions for my maintenance or support, in and by the will of the said Maranda Goodal, deceased.

"And I do, for the considerations aforesaid, release the said estate of Maranda Goodal, deceased, from all claim or liability by reason of any matter or thing in said will contained; and I further release for the said consideration *T. L. Newton*, the executor of said will, or the trustee under the same, from all claims or liability to me by reason of any provisions in said will made for my benefit, either for past, present, or future support; hereby releasing the said estate, and the said executor and trustee, and all other persons from any and all claims or liabilities, suits, actions, or causes of actions, now existing, or which may hereafter exist, by reason of any matter or thing contained in the said will of the said Maranda Goodal, deceased."

An order to account and show cause, pursuant to the prayer of the petition, was issued and served on the trustee, who filed his answer thereto, stating the amount of said estate in his hands at $2,460.21, and his readiness to pay over one half thereof to the petitioners because of the then late decease of Cyprian Chandler; but denying the power of the court to terminate the trust as to the other half during the life of Mrs. Fox.

The county court granted the petition, and directed the trustee to account and pay over to the petitioners the balance of the estate in his hands, and that upon so doing he be discharged from his said trusts.

The trustee appealed to the circuit court from all of the order except that portion which required him to file his account of the trust funds. The circuit court affirmed the order of the county court, and he now appeals to this court from the judgment of affirmance.

The cause was submitted for the appellant on the brief of

*Lander & Lander.* They argued, among other things, that it is the duty of the court to uphold and enforce the will as written. *Dodge v. Williams,* 46 Wis. 70. The testatrix had the right to provide that one half of the estate should remain in the hands of the trustee until after the death of Mary, and no court has the authority to otherwise order; nor can the beneficiary, nor the trustee, destroy the trust. R. S. secs. 4030, 2133, 2135, 2089, 2091; *Douglas v. Cruger,* 80 N. Y. 15; *Cruger v. Jones,* 18 Barb. 467; *Smith v. Harrington,* 4 Allen, 569.

For the respondents there was a brief by *James J. Dick* and *Edward Elwell,* and oral argument by *Mr. Elwell.* They contended, *inter alia,* that the legatee, devisee, beneficiary, or *cestui que trust* may release her interest in the property or estate, where, as in this case, the release is made to the person having the legal estate. *Miller v. Emans,* 19 N. Y. 384, and cases cited; *Moore v. Littel,* 41 id. 66; *Wilson v. Wilson,* 32 Barb. 340. The beneficial interest which Mrs. Fox had in the estate is divested by the release. No matter what her condition may be or may become, she can claim nothing against the estate or trustee. So far as she is concerned the trust is at an end; and the statute is that when the purposes for which an express trust shall have been created shall have ceased the estate of the trustee shall also cease. R. S. sec. 2098. The release is not in contravention of the trust, because the act of release terminates the trust. It is a settled principle of equity that *cestuis que trust* may make settlements, and that the trustee is bound to comply with them, and surrender the estate. Hill on Trustees (3d Am. ed.), 863, 376; Perry on Trusts, secs. 832, 833; 3 Lead. Cas. in Eq. (3d Am. ed.), 684. Where a legatee or *cestui que trust* refuses to take under the will, the fund or sum to which he was entitled goes, in a case like this, to the persons entitled to the remainder. Schouler on Ex'rs, 489, note 1; *Walker v. Bradbury,* 15 Me. 207; *Talbot*

*v. Radnor,* 3 Mylne & K. 254; *Williams v. Williams,* L. R. 8 Ch. Div. 789; 2 Story's Eq. Jur. sec. 1040.

LYON, J. If the county court, in the exercise of its equitable powers, may lawfully terminate a testamentary trust for the support and maintenance of any person during life while such beneficiary is still living, the power should be cautiously exercised, and no such trust should be thus terminated without a full hearing in some proceeding to which all persons interested in the trust fund are parties, nor without ample security being required that the beneficiary should never want for maintenance, if the trust fund would have been sufficient therefor.

It is clearly manifest from the will of Mrs. Goodal that she intended to pledge all the residue of her estate, after the other trusts created therein were executed, to the support and maintenance of Cyprian and Mary G. Chandler during their respective lives, and to place each of them beyond the reach of want while he or she survived, and while any portion of her estate should remain unexpended. It is quite immaterial that Mary has needed no assistance from the estate since her marriage, or that her husband is now entirely able and willing to support her. In the vicissitudes of human affairs she may come to want. Should such a misfortune overtake her, the intention of the testatrix was to provide a fund to which she might again resort for her maintenance.

Such provisions are frequently made by testators for weak-minded or unthrifty and improvident persons, who can easily be persuaded to release the provisions made in their favor. In such cases courts of equity will investigate closely, and hesitate long before giving full effect to such a release by terminating the trust. Indeed, they will not do so, and thus defeat the cherished purpose of the testator in

creating the trust, without some security that the beneficiary shall not be prejudiced thereby.

Mrs. Fox is not a party to this proceeding. We have nothing from her but her unexplained release. It is quite obvious that the court did not inquire into the circumstances under which it was executed, or whether it was a prudent or imprudent act. Conclusive effect seems to have been given to it, and the trust seems to have been terminated solely because she thus consented to its termination. It was a fortunate accident, rather than a material factor in the judgment of the county court, that the husband of Mrs. Fox has been and is now willing and able to support and maintain her. It would be a most pernicious and dangerous rule to allow testamentary trusts for the support of dependent persons to be absolutely terminated upon the mere consent of the beneficiaries, without regard to their capacity or the circumstances under which such consent was obtained, and without any guaranty against future adverse conditions.

Hence, assuming the power of the county court to terminate the trust on proper proceedings, we think three material errors intervened, either of which is fatal to the judgment. These are: (1) The failure to make Mrs. Fox a party to the proceeding; (2) the failure to investigate the circumstances under which the release was executed, the capacity of Mrs. Fox, and whether or not the execution of the release was a judicious and discreet act on her part; and (3) the failure to require security for the protection of Mrs. Fox, should she hereafter become indigent.

Whether any of these requirements might be dispensed with, were the trustee consenting to the termination of the trust, is not here determined. The trustee in a certain sense represents the testatrix. He was appointed by the testatrix to execute her intentions as expressed in the will; and so long

as he insists upon the preservation of the trust, none of the above requisites to a valid termination of the trust during the life of Mrs. Fox can lawfully be dispensed with.

It has thus far been assumed that the court, on a proper case made, may terminate this trust in favor of Mrs. Fox before her decease; and further, that it may do so without the consent and against the protest of the trustee. These are very important propositions, and we are not willing to determine either of them without further argument and investigation. The questions involved were argued to some extent by counsel, and have been somewhat considered by this court. But they are so important and far-reaching in their results that we feel justified in leaving them undetermined until they are more fully argued. Counsel are referred to Perry on Trusts, § 920, and cases cited in the notes, for adjudications bearing upon them. It is sufficient for the determination of the case before us that in any view error fatal to the judgments of the county and circuit courts has intervened.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to reverse that portion of the judgment of the county court which directs more than one half of the trust fund to be paid to the residuary legatees, and which discharges the trustee, but without prejudice to the right of the proper parties to renew the petition that the trustee be required to pay over the balance of the estate to the present petitioners, thus terminating the trust.