WILL OF STACK: MATHIOWETZ, Guardian *ad litem,* Appellant, vs. STACK and others, Respondents.

*November 10, 1933—February 6, 1934.*

*Bernard F. Mathiowetz* of Milwaukee, as guardian *ad litem,* for the appellant.

For the respondents Stack there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *C. J. Kersten.*

*Richard J. Hennessey* of Milwaukee, for the respondent First Wisconsin Trust Company, petitioner and one of the executors.

The following opinion was filed December 5, 1933:

OWEN, J.  The will of Stephen Sylvester Stack, deceased, was executed on the 22d day of November, 1928.  At the time of the execution of the will the value of his estate disposed of thereby was in the neighborhood of one million dollars, all accumulated through his individual efforts.  He

died on or about the 18th day of June, 1932, and in due course his will was admitted to probate. Owing to the shrinkage of values resulting from the depression, his estate at that time inventoried at about $550,000.

By the second paragraph of his will the testator devised in trust to his two sons, Sylvester S. Stack and Earl L. Stack, and the First Wisconsin Trust Company, real estate situated in the city of Milwaukee and described as "all my real estate situated and being in block 64 of the original plat of the city of Milwaukee, Wisconsin, in the east half of the southwest quarter of section 29, township 7 north, range 22 east." He provided that his trustees "shall manage, care for, and collect all the rents and income thereof, and out of such rents and income shall pay the expenses of the property, including taxes, insurance, and repairs unless they shall lease the same as hereinafter provided, when the lessee shall pay the taxes, assessments, insurance, and repairs, and after paying the said expenses thereof said trustees shall, out of the net rents and income of my estate, pay the sum of $200 per month to my son Earl L. Stack, and the sum of $100 per month to my son Sylvester S. Stack, during the first two years after my death, and also shall pay to my son Alphonso F. Stack such sum as in their judgment shall seem best for his interests, and not to exceed the sum of $200 per month; provided, however, that if the said three executors unanimously agree to increase the allowance to any of my said sons they may do so, but in no event to exceed double the amount hereinbefore stated; however, in case of injury or sickness, or other calamity, the said trustees on application to the court may obtain authority to expend a further amount for the use or benefit of any of my said sons."

By the third paragraph of his will testator authorized and empowered such executors and trustees, or either of them, "to make a long lease of said real estate on a land lease, with a clause for the reappraisement or revalution every ten years,

the lessee to pay all taxes, assessments, insurance, and repairs in addition to the rental."

By the fifth paragraph of his will testator devised the residue of his estate to the same trustees "until my youngest son will be thirty-five years of age, when the same shall be divided among my surviving sons and the issue of any deceased son, taking their father's share by representation, in equal shares."

The youngest son has arrived at the age of thirty-five years, and there is no question raised concerning the disposition of the residue of the estate. The administration of the estate is completed, and the First Wisconsin Trust Company, as one of the executors, filed a petition for the construction of the will in so far as it involved the trust set out in the second paragraph of the will above quoted. The sons, co-executors, did not join in the petition for the reason that, by so doing, their interest might become adverse or antagonistic.

The county court held the trust created by the second paragraph of the will to be void for uncertainty in several respects, decreed that the property therein described became a part of the residue of the estate and should be distributed to the sons, Sylvester S. Stack and Earl L. Stack (the son Alphonso F. Stack having predeceased testator) in accordance with the fifth paragraph of the will.

Of the various questions involved, the first and dominant one is to ascertain the property which the testator intended to place in trust by the second paragraph of the will. That property is described as "all my real estate situated and being in block 64 of the original plat of the city of Milwaukee, Wisconsin, in the east half of the southwest quarter of section 29, township 7 north, range 22 east." Now it appears that immediately north of this property, contiguous and adjoining thereto, is additional property of the testator which is not described as a part of the trust referred to in

the second paragraph of the will, and which is described as follows: "the east 106 feet of that part of lot 2 not used as a street, in block 175, in the east one-half of the northwest quarter of section 29, township 7 north, range 22 east, in the Fourth ward of the city of Milwaukee." It is to be noted that these two parcels are situated in separate and distinct lots, separate and distinct blocks, and separate and distinct quarter-sections. So far as their legal descriptions are concerned, they are distinct and separate pieces of real estate.

However, for many years prior to the death of the testator these two separate pieces of property constituted a unit so far as the use to which they were devoted is concerned. They constitute a corner property on North Eighth street and West Wisconsin avenue. For many years prior to the making of the will, there had existed thereon a four-story fifteen-apartment building, fronting on West Wisconsin avenue, and a row of five stores projected north from the north side of said apartment building and also fronting on West Wisconsin avenue. The property described in block 175 abuts on Wisconsin avenue and separates Wisconsin avenue from the property described in block 64. It is a wedge-shaped piece of land 1.82 feet in width at the westerly end and 22.60 feet in width at the easterly end. The line between the two pieces of property, that is, block 175 and block 64, bisects the northerly end of the apartment and store buildings which occupy both parcels of land as a unit, and fronts on West Wisconsin avenue. If it be held that the testator intended to place in the trust only the property located in block 64, it is apparent that he intended to ruin the use of the buildings now on the two descriptions and which have always hitherto been maintained as a unit. When we apply the will to the property under consideration, the result gives rise to an ambiguity, and the question to be considered is whether the testator intended to deal with the

property at the corner of West Wisconsin avenue and North Eighth street as a unit, or whether he in fact intended that only the property located in block 64 should be placed in the trust. This ambiguity gives rise to the necessity of construction, as held in *Will of Boeck,* 160 Wis. 577, 152 N. W. 155. That case holds that a will unambiguous on its face may be rendered ambiguous when applied to the subject matter with which it deals, and that when an ambiguity so arises it is the function of the court to ascertain what the testator really meant by the language used in his will.

When we consider, as was found by the court, that the property at the corner of West Wisconsin avenue and North Eighth street had always been dealt with as a unit and that the buildings erected thereon had occupied both parcels of real estate; that this constituted the principal real-estate holding of the testator at the time he executed his will as well as at the time of his death, as also found by the court; that the testator evidently had in mind the execution of a long-term lease on these premises, a practice much approved in the business world at the time the will was drawn; that he gave all the remainder of his estate to his sons without any limitation or restriction upon its use and, evidently, intended to restrict the use of this property so that it could not be dissipated and would, eventually, go to his grandchildren if he had any; that he was a man of more than ordinary business judgment,—to say that he intended to place in trust only his property located in block 64, shutting it off entirely from West Wisconsin avenue, a principal thoroughfare in Milwaukee, is to deny to him the business acumen which is unstintingly accorded to him by all who had any connection with this case. These circumstances should be held to give rise to an ambiguity imposing upon the court the duty of ascertaining the intent of the testator.

In view of all that has been said in the briefs concerning the business acumen of the testator, we cannot impute to him

a purpose of destroying the value of both these properties, because it is plain that the value of each depends upon the relation which each bears to the other. It may not be easy to explain the lapse or inadvertence by which the description of block 175 was left out of the will. But however that may be accounted for, we cannot indulge the thought that its omission was the deliberate intention of the testator. We therefore conclude that the first and dominant error of the trial court consisted in the conclusion that the trust carried with it only the property included within block 64. The will should be construed as though the second paragraph included the premises described in block 175. It may be that there is not a wealth of precedent justifying the inclusion within the grant property not specifically described in that connection. While there is much authority for justifying the elimination of surplus language in a will to arrive at the testator's intent, precedents upholding the addition of language for that purpose are not so prevalent. However, we think the doctrine declared with great clarity and confidence in *Will of Boeck*, 160 Wis. 577, 152 N. W. 155, fully justifies the practice.

The court found many uncertainties in the will. Thus, in the second paragraph of the will the duration of the trust is fixed during the "lives of my sons Earl L. Stack and Alphonso F. Stack and for twenty-one years thereafter." In the fourth paragraph of the will it is provided that "at the termination of the trust hereinbefore provided for, the real estate shall be divided equally among my sons and the issue of any deceased son by representation, and if there should be no issue of any of my sons, in that case the said trust estate shall be divided equally among my heirs according to the laws of descent in the state of Wisconsin." The court held that these two provisions gave rise to an uncertainty because, by the fourth paragraph of the will, the possibility of more than one son participating in the property

after termination of the trust was assumed, and whereas he had three sons but one could survive. While this is not consistent with the term of the trust as definitely fixed in the second paragraph, it can give rise to no uncertainty concerning the duration of the trust. The duration of the trust was "during the lives of my sons Earl L. Stack and Alphonso F. Stack and for twenty-one years thereafter." To harmonize these provisions by construction is not a difficult matter.

The trial court found further uncertainty because in the second paragraph of the will the testator provided for the payment of incomes to Earl L. Stack and Alphonso F. Stack for the first two years after his death, but made no provision for the payment of income arising from the trust estate after the expiration of said two years. It is true that the will does not make provision for the disposition of the income except for the two years following the testator's death. However, that does not make the trust void. The statute steps in and says that the rents and profits belong to the person presumptively entitled to the next eventual estate. Sec. 230.40, Stats.

Paragraph 6 of the will provides that "in case of the death of any of my sons leaving a widow, but no issue, during the time that such widow shall continue to be a widow of a deceased son of mine, the trustees shall in their discretion give her such allowance, in monthly instalments, as may be necessary for her support, but in any case not to exceed $150 per month." The seventh paragraph provides that "if any of my sons shall die leaving issue, the trustees of my estate shall pay for the support, maintenance, and education of such child or children, a sum suitable until such child or children shall attain the age of eighteen years, and in case any such child or children shall show superior standing in any line of studies the allowance for such shall be continued until after graduation from a proper school or

college, but the expense of such education shall not in any one year exceed the sum of $1,500, including maintenance, clothing, and schooling; and if any issue of any of my sons should on account of being crippled or mentally incompetent be unable to earn his or their own support, the said trustees may continue the allowance to such child or children during such disability."

The court assumed the possibility of beneficiaries contemplated by the sixth and seventh paragraphs of the will being in existence after the expiration of the term of the trust, and he regarded this possibility as giving rise to such an uncertainty in the duration of the trust as to make it void. The answer to these assumptions is, that the term of the trust is clearly and indubitably fixed as continuing during the lives of Earl L. Stack and Alphonso F. Stack and for twenty-one years thereafter. At the expiration of such term the trust terminates, and even though there be beneficiaries in existence as described in the sixth and seventh paragraphs of the will, the benefits accruing to them under the terms of the will must of necessity terminate with the termination of the trust. We discover nothing so uncertain about the terms of this trust as to render the trust itself void.

The court further found that the purpose of the trust was impossible of accomplishment, for which reason it is also void. This finding was based upon a consideration that from 1929 to the date of the hearing upon the petition for a construction of the will, the property as a whole had been operated at a net loss of $23,701.13, during which time a building known as the Lemke building, located on said premises, produced an income, and that since the recent destruction of said Lemke building by fire no income would be realized from this building, thereby increasing the loss resulting from the operation of the property; that the entire trust property, including block 175, during the entire time

that it was operated by testator never was self-sustaining, but was largely maintained by financial aid from other sources of testator's estate, and that under present conditions the property is incapable of producing sufficient income to pay taxes, insurance, and repairs as provided in paragraph 2 of said will, as is evidenced by the average yearly loss sustained since the year 1929. The court further found that an expenditure of $10,000 is immediately necessary to place the present buildings in a proper state of repair, and that an additional expenditure of $16,000 is necessary to rehabilitate the Lemke building, and that there is no way to realize this amount of money for these purposes. In other words, according to the finding of the court, under present circumstances the operation of the property is bound to result in a deficit and, eventually, the property will eat itself up.

While it is apparent that at the time of the execution of the will the testator had no such thought, because for at least two years he provided for the payment of rather substantial incomes to his sons from the income of the trust estate, we are probably bound by the finding of the trial court with respect to the present earning possibilities of the trust property. But does that fact make the trust void? We can discover no theory upon which it can be held that the trust itself is void. The trust was for a perfectly lawful purpose. It contravened no considerations of public policy. The fact that in view of changed economic conditions it may not prove a profitable venture, does not render the trust void. It may be that the circumstances which prompted the trial court to declare the trust void would justify a court in terminating the trust because of impossibility of performance. *Will of Hamburger,* 185 Wis. 270, 201 N. W. 267. Upon that question we consider it improper to express an opinion. What the lower court did was to declare the trust void be-

cause of impossibility of performance, and that it was influenced in this conclusion to some extent by the fact that it construed the trust to include only the property described in block 64 is rather apparent. So far as it was so influenced, its conclusion is based upon a wrong premise. There is nothing in the will itself which justifies declaring the trust void for uncertainty. If there is a situation here which justifies judicial relief, it cannot be premised upon the conclusion that the trust itself is void. As above stated, whether under the circumstances it should be terminated because of impossibility of performance is a question which we reserve until properly presented. We do not at this time inquire whether under the terms of the will before us it would make any difference in the eventual disposition of the corpus of the trust if the trust be declared void or terminated because of impossibility of performance. It is apparent that a different disposition might result in some cases where the declaring of a trust void would turn the corpus of the trust into the residuary of the estate and where a termination of the trust would give the corpus to the remaindermen or the *cestui que trustents*.

*By the Court.*—Judgment reversed, and cause remanded with instructions to render judgment in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on February 6, 1934.