WILL OF STACK: MATHIOWETZ, Guardian *ad litem,* Appellant, vs. STACK and others, Respondents.

*December 6, 1934—January 8, 1935.*

*Bernard F. Mathiowetz* of Milwaukee, as guardian *ad litem,* for the appellant.

For the respondent Earl L. Stack, as trustee, there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *Chas. J. Kersten* and *Arno A. McKinnon.*

For the respondents Earl L. Stack, Evelyn Louise Stack, Sylvester S. Stack, and Marie Therese Stack, individually, there was a brief by *J. Leo Dalton* of Milwaukee.

ROSENBERRY, C. J.  The will of Stephen Sylvester Stack was considered and construed by this court in a prior case, which is reported in 214 Wis. 98, 251 N. W. 470.  We shall first consider the petition to terminate the trust.  Stephen Sylvester Stack died on the 18th day of June, 1932.  By his will he created a trust in certain real estate more particularly described in the opinion on the former appeal.  The trust was to continue during the lives of his sons, Earl L. Stack and Alphonso F. Stack, and for twenty-one years thereafter. The testator left surviving him Sylvester S. Stack, born February 20, 1896, married, but no issue of said marriage, and a son, Earl L. Stack, born November 26, 1897, married, but no issue of said marriage.  Alphonso F. Stack, mentioned in the will, son of the testator, died March 25, 1930, having never married.  The wife of the testator died on August 6, 1928.  At the time of his death there were no lineal descendants of the testator except Sylvester S. Stack and Earl L. Stack.  He, however, had brothers and sisters, nieces and nephews.

After describing the terms of the trust, the petition sets out that the trust is absolutely impossible of performance, for the following reason briefly stated: The buildings are old, obsolete, dilapidated, in need of extensive and costly repairs, and are not self-sustaining; that it would require $31,000 to put the property in repair, after which it would not be self-sustaining; that it is impossible to sell or mortgage said property under present economic conditions.  The allegations with respect to sale and lease are:

"That it is impossible to mortgage or sell said property for an amount reasonably approximating the minimum valuation thereof; that the property is valued by the appraisers in the

estate at $185,000 and for purposes of taxation is valued at $222,000; that it is impossible to make a lease either for a long or short time for an amount approximating the rental value of the premises; that an application has been made for the establishment of a lien against the premises in the sum amounting to approximately $40,000; that the taxes for the year 1933 remain unpaid."

It seems necessary in a determination of the questions raised to consider the nature of the power which courts exercise over trusts and the considerations which should guide courts in the discharge of their duties in relation thereto.

Courts of equity have always claimed and exercised exclusive jurisdiction in cases involving trusts and the conduct of those appointed to execute them. 10 R. C. L. p. 349, § 99; 26 R. C. L. p. 1373, § 234. Holdsworth says:

"The unique character of the English use or trust is the direct consequence of the unique manner in which the principles of equity were developed in England, owing to the fact that their administration was entrusted to a separate court.

"The reason why jurisdiction over the uses came, from the first, under the jurisdiction of the court of Chancery, is plain. The inadequacy of the procedure of the common law to try cases which involved a breach of trust was, as we have seen, one of the reasons why the common law refused to recognize them. But this refusal obviously encouraged frauds of the grossest description. The court of Chancery, which set out to do equity, employed a procedure which well fitted it to discover and to remedy such breaches of trust." 4 Holdsworth, History of English Law, 418.

From the beginning, for the reasons stated, courts exercising equity powers have been charged with the duty of taking such action upon their own motion as was necessary to carry out the intention of the creator of the trust. From the very nature of things the continuation of a trust is often burdensome to the trustee and to the beneficiaries present and remote, and for that reason all sorts of devices have been resorted to in an effort to move courts of equity to modify the

terms of the trust or, as in this instance, to terminate it. The courts have, on the other hand, refused to yield to the importunities of interested parties, and save for some well-established exceptions require the trustee to administer the trust in the manner laid down by the settlor. If the trustee refuse or fail the court will appoint another trustee.

In no jurisdiction perhaps have courts adhered more firmly to these fundamental principles than in the state of Wisconsin. In *Sumner v. Newton,* 64 Wis. 210, 25 N. W. 30, it was said:

"It would be a most pernicious and dangerous rule to allow testamentary trusts for the support of dependent persons to be absolutely terminated upon the mere consent of the beneficiaries, without regard to their capacity or the circumstances under which such consent was obtained, and without any guaranty against future adverse conditions."

In *Will of Hamburger,* 185 Wis. 270, 201 N. W. 267, the whole matter was very carefully considered. This case seems to be largely lost sight of so far as trusts are concerned because it was not properly digested. The court there said:

"It seems hardly necessary to review in detail the cases. An examination of them will show that one or more of the following considerations led the court to terminate the trust: All the interests had become vested in the beneficiary or beneficiaries, and no third person could be interested; or all the purposes of the trust had been accomplished; or there was no express or implied prohibition of the termination; or it was a mere dry trust and all the beneficiaries desired its termination; or such events had transpired after the execution of the will as had not been and could not have been anticipated by the testator, which rendered the continuance of the trust unnecessary." See also *Will of Rice,* 150 Wis. 401, 452, 136 N. W. 956, 137 N. W. 778; *Upham v. Plankinton,* 152 Wis. 275, 140 N. W. 5.

The cases dealing with the power and propriety of invasion by a court of the terms of a trust are collected in a note, 80 A. L. R. 117.

The matter is dealt with in the Restatement, Trusts, § 163 (4).

"The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purpose of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

Restatement, Trusts, § 326, provides:

"If owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust."

The term "impossibility" as used in the law of trusts means something more than that the execution of the trust is burdensome or inconvenient or in the judgment of those interested the settlor's intention would be better achieved in some other way or other consideration of that sort. Thus, where the trust fund was to be invested in the stock of a certain canal company, which was unpurchasable, the trustee was authorized to invest the fund in other forms of investment. *McIntire's Adm'rs v. Zanesville,* 17 Ohio St. 352. So, where the funds were to be invested only in real-estate loans and the prescribed form of investment became unavailing, the court authorized a loan on other sufficient securities without impairing the trust. *In re John's Will,* 30 Or. 494, 36 L. R. A. 242. So, where the settlor authorized a sale, the purchase-price to be paid in Georgia bonds, the court authorized the trustee to accept cash for the reasons stated. *Title Guarantee, etc., Co. v. Holverson,* 95 Ga. 707, 22 S. E. 533. So, because of changed conditions due to the growth of cities, equity will modify the terms imposed and order such disposition of the property as will enable the trus-

tee to carry out the object of the creator. See *Johns v. Montgomery,* 265 Ill. 21, 106 N. E. 497, and cases cited in Ann. Cas. 1916A, note, page 999, at page 1003. We find no authority for the proposition that, where a trust becomes impossible of performance for any of the reasons suggested or a situation arises not in contemplation of the settlor which threatens the loss of the trust *res,* the court will terminate the trust in the sense that it will defeat the rights of remaindermen for the benefit of the life tenants where the parties are not *sui juris* and before the court. What courts of equity do under circumstances of that kind is to deviate from the terms of the trust in some way which will permit the settlor's intention to be fulfilled so far as circumstances permit, by making a different form of investment, by authorizing a sale of the property and a reinvestment of the proceeds of the sale, or in some other way modifying the terms imposed by the settlor, having in mind, however, that the will of the settlor should be executed as nearly as possible, considering the changed conditions.

In *Gibson v. Gibson,* 280 Mo. 519, 219 S. W. 561, a trust was created with a remainder over to Margaret O. Gibson's children, if any, but if she died without issue then one-half of the property vested in her husband and the remainder to be equally divided. Margaret O. Gibson was seventy-five years of age and unmarried. She testified that she would never marry. It was sought to terminate the trust, and it was alleged that she was the sole beneficiary of the trust, was willing and desirous that the trust should be terminated; that the purposes for which the trust was created had been fully accomplished, and that the beneficiary was fully competent to handle the property. There was a demurrer to the petition which was sustained. The court said:

"It must be conceded that the pleadings and the proof under the second count of this petition show a lamentable state of affairs, so far as the beneficiary is concerned. The

property apparently scarcely pays expenses, and if this property is the beneficiary's sole source of income her case is hard indeed. However, courts do not sit to write wills, but to construe them, and we have no more right to set aside a will than to set aside a contract. In effect, to ask us to do so is to call upon this court to substitute its judgment for the judgment of the testator, and experience holds up a warning finger at this point. It may well enough be that present conditions would seem to indicate the advisability of destroying the trust created in this case. Such a situation might arise with reference to any trust created by will or otherwise, but the indisputable fact remains that this court has neither the moral right nor the lawful power to substitute its judgment on matters of business for the judgment of testators or others creating trusts. If such a thing were done, it might well happen that some unexpected change would, in the course of a short time, vindicate the wisdom of the testator, and emblazon the folly of the court. . . .

"However unhappy the consequences which may ensue to any of the parties to this action by reason of the terms of the will, those consequences must be attributed to the testator, and not to the law. So long as those who are of a mind to write wills insist upon projecting the dead hand so far into the future, so long must the beneficiaries under such wills take their chances on the wisdom or the unwisdom of the provisions made."

The power exercised by courts of equity to enforce the administration of trusts is a supervisory power. It is exerted to carry out the intention of the settlor. Courts of equity will do all within their power to see that the trust is executed in accordance with its terms. What results from so-called impossibility of performance is ordinarily a deviation from the trust. It does that only when it is imperatively necessary to carry out as far as possible the settlor's intention. A court of equity will not defeat the right of remaindermen to the benefit of the trust.

In this case there is no reason from the record to suppose that the sons, Earl and Sylvester, are not acting in the utmost

good faith from their point of view in seeking to have the trust terminated and the rights of the remote beneficiaries under the will defeated. They no doubt feel, and for that matter they may be correct in their judgment, that their wives and their children and even their more remote kindred will be better provided for if the trust is actually terminated and the property turned over to them free and clear of the trust. Here their judgment is in conflict with that of the testator as expressed in his will. Nevertheless it is the duty of the county court to see that the trust is executed and that the testator's intention is not defeated. As pointed out in *Gibson v. Gibson, supra,* courts have no right to substitute their judgment for the judgment of the testator. This is not an application to sell the property and subject the proceeds to the terms of the trust, nor should the property be sold unless it is necessary to preserve the trust *res.* In no event has the court any right under the law to turn either the property or the proceeds of the sale over to the residuary legatees free of the trust.

Briefly summarized, the findings in this case are to the following effect: The will was offered for probate, and the sons, Sylvester and Earl, at once set up the claim that the trust could not be performed, for the reason that the will did not properly describe the property intended to be placed in trust. The contention was disposed of adversely to the sons in *Will of Stack,* 214 Wis. 98, 251 N. W. 470. Upon that trial it was also urged that the trust was void because impossible of performance. This court held that impossibility of performance did not affect the validity of the trust, but suggested that if the trust was in fact impossible of performance it might be terminated. The case was remanded to the county court, whereupon the petitions referred to in the statement of facts were filed. It appears that such proceedings were had that the First Wisconsin Trust Company

and Sylvester Stack ceased to be trustees and Earl L. Stack became the sole trustee under the trust, and it is upon his petition for a termination of the trust that the questions being dealt with arise. The matter came on for a hearing. In addition to the trustee and his brother, Doctor Stack, four witnesses were called by the petitioner, none on behalf of the remaindermen. The testimony given by these witnesses fully supports the findings of fact made by the trial court, which, in short, are that the trust is impossible of performance because it does not presently produce a net income, because a loan cannot be made on such terms as would warrant a present incumbrance of the property in anticipation of future income; that the trust estate is without other available funds; that the property cannot be profitably rented in its present condition;—

"that even if the will herein authorized or permitted sale of the trust property, it would be impossible to sell the trust property today for any amount of money reasonably approximating the minimum valuation of said trust property."

Judgment was entered terminating the trust. The findings are positive, somewhat argumentative, evidently prepared by counsel for petitioner, and present the strongest case that could be presented upon the facts disclosed by the evidence.

The issues arising upon the petition to terminate the trust seem to have been tried and determined without a due appreciation of the law governing the situation. No witnesses were called by the guardian *ad litem.* The trial court merely considered what was offered by the petitioners. The trial was little, if any, more than an *ex parte* proceeding so far as the facts are concerned. While the law was ably discussed by the guardian *ad litem,* the important question relates to the facts. Apparently it was assumed by counsel as well as by the court that the court had power to divest the remaindermen and lodge the unincumbered ownership of the corpus of the trust in residuary legatees. While no doubt the court has

the power, in case it is found upon further investigation that a continuation of the present situation threatens a total loss of the trust *res,* to order a sale and cut off the interest of the contingent remaindermen in the real estate, which constitutes the corpus of the trust, and to cause the proceeds to be impressed with the trust and reinvested, it is under a duty not to destroy the trust. Its power to sell arises from its power to supervise the administration of the trust.

The situation in this case is somewhat unusual by reason of the fact that, excepting the Trust Company, those who were charged by the will with the administration of the trust, one of whom is the present trustee, are hostile in interest to the remaindermen. There is a clear conflict of interest here which arises out of the situation created by the will. If the present trustee, because of his interest as an heir and legatee, cannot undertake the execution of the trust in good faith and with good will, he should resign; otherwise he may be charged personally for any loss which may result in the administration of the trust estate. In view of these and other considerations, it is considered that the judgment terminating the trust should be reversed and the cause remanded for further proceedings to enable the court to determine whether the best interests of the trust estate will be subserved by the administration of the trust or by a sale of the property and the investment of the proceeds in other forms of investment. A merely colorable sale should not be permitted, nor should those who have a direct interest in defeating the trust be bidders at the sale. The sale should be one made in good faith and solely for the benefit of the trust estate. While the law relating to a sale of the property which constitutes a trust of the trustee does not apply to both legatees, their interests are the same while their duties and obligations are different.

We come now to a consideration of the petition of Earl L. Stack and Sylvester S. Stack for the establishment of a lien upon the real estate constituting the corpus of the trust

in the sum of $38,531.34. It appears without dispute that on June 6, 1932, the testator deposited the sum of $9,000 with the city treasurer of the city of Milwaukee, the same to be applied and in payment of all city taxes owed and owing from the testator. The executors duly inventoried the certificate issued by the city treasurer and duly accounted for the interest thereon as paid at the rate of two per cent. The city treasurer applied $7,385.81 on account of taxes levied against testator for the year 1932 and the remainder accounted for by the executors. The petitioners now seek to have this sum declared a lien upon the corpus of the trust so far as it operated to discharge the taxes upon the trust property. We find no warrant for the establishment of such a lien in favor of the petitioners. The deposit amounted to a prepayment of the taxes. All that remained to be done was a matter of accounting between the depositor if he lived and his executors if he died. No authority is cited sustaining the position of petitioners, and the petition should be denied.

Upon petition the court, after a hearing, fixed the amount of state and federal inheritance taxes. The federal estate taxes were paid on the 13th day of June, 1933, and on the 16th day of June, 1933, the executors paid the state inheritance tax, being entitled to a five per cent discount by reason of prepayment. The petitioners now seek to have these taxes so paid pursuant to the judgment of the county court reallocated and a lien declared in their favor for the amounts attributable to the trust estate.

We find no warrant in the law under the circumstances of this case for establishing a lien upon the trust *res* in favor of petitioners. It is claimed that a lien arises by reason of sec. 72.07. This section authorizes an executor to sell property to pay inheritance taxes, but it makes no provision for a lien. We find nothing in the section from which it can be inferred that where the taxes are paid without a sale a lien upon the property which might have been sold arises.

We are cited to *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409, as sustaining the right of petitioners to a lien. There an employee acting in a fiduciary capacity used his employer's funds to improve his own homestead, and it was held that the employer was entitled to a lien.

We are next cited to *In re Douglass' Estate,* 104 Misc. 359, 171 N. Y. Supp. 956. In that case the executors filed their final account and asked the court to determine whether the federal estate tax was an expense of administration or should be distributed proportionately among the legatees. It was not held that the amount of the tax was a lien. Apparently the right to a lien was not claimed.

We are next asked to consider *Barron v. Whiteside,* 89 Md. 448, 43 Atl. 825. There a trustee for the benefit of creditors took possession of certain property and collected the rents, but refused to pay the taxes. It was held a covenant to pay the rent and the taxes ran with the land; that the mortgagee, who was compelled to pay the taxes, was entitled to be subrogated to the rights of the state, the city, and the owner of the ground rent as against the trustee.

In *Liverman v. Lee,* 86 Miss. 370, 38 So. 658, a bidder at a void sale paid in the money which was applied to the satisfaction of a tax lien. It was held that he had a right to be subrogated to the rights of a holder of the tax lien.

So far as we can see, these cases have not even a remote bearing on the question under consideration here. In this case there was a judgment of the county court by which the executor was directed to pay the taxes and pursuant to which he paid them. That judgment was never appealed from, was never modified, and the tax was paid out of the funds of the estate. It is now contended that, because the share which will fall to the petitioners will be less than it would have been if the county court had correctly construed the will and a judgment had been entered against the trustee, that the petitioners are presently entitled to a lien upon the premises in

the amount of the tax paid by the executor pursuant to the judgment. When and how the tax should be paid was a matter to be determined by the executor under the advice and direction of the court. Without objection from any person, all parties being before the court, judgment was entered and the tax paid accordingly. Under such circumstances we can find no authority in the law for the establishment of a lien in favor of petitioners. The conduct of the petitioners is not wholly equitable. The tax was based on the rate applicable to next of kin of the deceased. Without making any allocation whatever, petitioners now seek to apply the highest brackets applicable in cases of trust property and deduct the whole amount so ascertained from the amount paid. This would leave them with much less than their proportionate share of the taxes. This is hardly an equitable method of apportioning the tax. If an advantage has been derived as against the United States and the state of Wisconsin because the tax was assessed upon a basis which now appears to have been wrong, an equitable apportionment would require that the trust *res* be assigned its share of the advantage.

It is considered that the judgment of the county court determining the amount of the tax and the payment of the amount adjudged is conclusive upon the rights of the parties, and the petitioners are entitled to no lien against the trust *res*.

*By the Court.*—The judgment awarding petitioners a lien is hereby reversed, and cause remanded with directions to dismiss the petition. The judgment terminating the trust is reversed, and cause remanded for further proceedings as indicated in the opinion.