ESTATE OF CULLEN: FIRST NATIONAL BANK OF SUPERIOR
and another, Executors, Respondents, vs. CULLEN, Appellant.

*April 11—May 9, 1939.*

294

*Horatio V. Gard* of Superior, for the appellant.

For the respondents there was a brief by *Powell & Sprowls* of Superior, and oral argument by *John S. Sprowls.*

FAIRCHILD, J.   On this appeal the problems are: (1) Under the will of John J. Cullen, may the trust of $30,000 for the benefit of Michael be set up out of assets of the estate reckoned at their inventory value? (2) Should a proportionate share of estate and inheritance taxes which have been paid by the executors be charged against the income which Michael is entitled to receive under the will?

It appears that although the trustees have disposed of certain assets, they have hesitated to convert the bulk of the estate because so much of the property is real estate whose value is at present greatly depressed.   Such sales as the trustees have made have been at about three fourths of the inventory value, and it appears likely that the proceeds, when all this real estate has been converted, will be considerably less than the testator contemplated when he directed the trustees to set up a number of trusts, several of which were to have a fixed value.   It is therefore important to determine whether

the various trusts may be set up with assets taken at inventory value so that all the beneficiaries will suffer by reason of the shrinkage, or whether each trust must be set up out of cash or property readily divisible in kind taken at the value as of the time of setting up the trust, in which case Michael will be in a favored position because his trust is now the first to be set apart.

There can be no question about the duty of the executors to sell the real estate. The testator used words well calculated to impose that duty upon his executors. He directed them "as soon after my decease as they can reasonably do so without undue sacrifice to convert my estate into cash, or other property readily divisible in kind." It is true that the testator gave the executors permission to retain any form of investment of which he might be seized at his death. While this permission is important in determining what is to be done, it is a permission to be exercised only "having in mind my desires above expressed" and is, therefore, subordinate to the positive directions in other portions of the will, and such retained investments must be susceptible to the uses required by the will. The direction to convert, together with the permission to retain certain investments, leaves no doubt that the land is to be sold and turned into cash or other property readily divisible in kind. There is in the first quotation above an implication of intent to have present holdings sold, but this does not necessarily include the part of the estate consisting of property readily divisible in kind. That matter, together with other administration matters, is left to the sound discretion of the trustees.

Did the testator intend that the conversion provided for in the will should take place before the various trust funds were set apart, or did he intend that a division of his estate should be made at once, on the basis of inventory values, and that the trustees should thereafter convert the real estate of each separate trust into cash or other property readily divisible in

kind "as soon thereafter as they can reasonably do so without undue sacrifice?" This question is answered by the provision made for Michael. The testator's purpose was to provide an income for his brother, to begin at once. If there were an immediate conversion, or if the existing assets were divided, there would at once be a trust fund belonging to Michael and the monthly income provided for him could be taken from the principal or income of that fund. But the testator must have foreseen a delay in setting up the trust for his brother, because he provided that "until such time as said trust fund shall be set aside and producing income, I direct said executors and trustees (whilst acting in either capacity) to pay to said brother from my general estate, the sum of $250 per month."

If the provision for income out of the estate does not serve to make clear the intention that the trust for Michael be set up out of cash or property readily divisible in kind and at a value as of the time of setting up the trust, there can be no doubt of that intention when consideration is given to the language describing the size of the trust for Michael, namely, "the sum of $30,000." It is true that certain other trusts were similarly described, but the testator directed that all of these trusts should be set up in a certain order, and gave Michael preference.

It is considered that the testator intended his executors to convert his estate as rapidly as they can do so without undue sacrifice; that in the meantime $250 is to be paid to Michael each month from the estate; that as soon as the executors are in possession of cash or property readily divisible in kind having a cash value of $30,000, they are to set those assets apart for Michael, and thereafter his monthly income is to be paid out of the principal or income of that fund; that the other trusts are to be set apart in the order directed by the testator; and that if the estate is exhausted before all of the trusts have been set apart, the named beneficiaries who

take nothing cannot complain, since that was the will of the testator.

As to the point raised on the argument with respect to the time allowed the executors in which to accomplish conversion, we shall only say that they have a duty to move in that direction. The expression "without undue sacrifice" was given emphasis in the will. What would be undue sacrifice in view of existing conditions presents a question of judgment. The executors cannot, hoping for better times, wait forever. On the other hand, it appears from the testimony that the problem of realizing on the assets is a difficult one. If the trustees, acting in good faith upon a consideration of all the factors involved, and with the approval of the court secured upon due notice to all concerned, have determined that a delay is to the interest of the various beneficiaries, that determination cannot be disturbed on this appeal.

While the present will authorizes investment in securities which are not legal trust investments, an analogy may be drawn from the rule with respect to what constitutes a reasonable time for converting an estate into legal securities. That rule has been stated as follows:

"Ordinarily any time within a year is reasonable, but under some circumstances a year may be too long a time and under other circumstances a trustee is not liable although he fails to effect the conversion for more than a year. Thus, if there is a ready market for the property, it would usually be improper to delay the sale for a year. If, however, the property even though it has a ready market could not be sold except at a sacrifice, it may be proper for the trustee to delay the sale for more than a year. The question in each case is whether under all the circumstances the trustee acted with prudence in delaying the sale." Restatement, Trusts, p. 666.

The other question which is raised on this appeal is whether it was proper for the court to authorize the executors to deduct taxes from the amount which Michael is to receive. The appellant contends that because the taxes were paid in the

first instance out of the estate, they cannot now be recovered from the beneficiaries. No question is raised as to the computation of the tax, and it appears to be conceded that the share charged to the appellant is fairly proportioned to the value of his bequest.

The appellant relies upon *Will of Stack* (1935), 217 Wis. 94, 258 N. W. 324, and upon what was there said with respect to sec. 72.07, Stats. Reference is also made to the provisions of sec. 72.05, and it is argued that the right of the executors to deduct a proportionate share of the taxes from payments to Michael out of the estate must be derived from one of the other of those sections, because the Inheritance Tax Act, ch. 72 of the statutes, is a complete scheme or code governing taxation of inheritances. On the point that ch. 72 is a complete scheme, the appellant cites *Will of Merrill* (1933), 212 Wis. 15, 18, 248 N. W. 909.

Sec. 72.05 (1), Stats., provides that taxes imposed by the act shall be due and payable at the time of the decedent's death; that every such tax shall be and remain a lien upon the property transferred *until paid;* that the person to whom the property is transferred and the administrators, executors, and trustees of every estate so transferred shall be personally liable for such tax *until its payment.* It is argued that the italicized words are of controlling importance, and that once the tax has been paid all liability for it, on the part of anybody, ceases. It is probably true that the application of sub. (1) is exhausted when the tax has been paid to the state, but the statute merely indicates what persons are initially liable, and is not controlling on the question as to where the tax shall finally rest. It makes provision for personal liability in order to protect the state and to insure collection of the tax.

Sec. 72.07, Stats., also relates to collection, but it protects, in addition to the state, the executor, administrator, or trustee upon whom personal liability is imposed by 72.05 (1). How is he to raise the money to pay the tax? The statute

provides that he may sell property of the decedent, or if he has in charge or in trust any legacy or property for distribution, *subject to such tax,* he is authorized to deduct the tax therefrom and to pay it over to the county treasurer. The statute further provides that the administrator, executor, or trustee shall not deliver or be compelled to deliver any specific legacy or property *subject to tax under the act,* to any person until he shall have collected the tax thereon. It is argued that this section has no application after the tax has been paid to the state, because the property is not thereafter subject to the tax.

If sec. 72.07, Stats., does not expressly authorize the administrator, executor, or trustee to reimburse himself for a tax already paid, neither does it, either expressly or by implication, prohibit him from doing so. There is no authorization to the executor or trustee to determine as a matter of discretion who shall bear the burden of the tax, nor is there anything to indicate that the circumstance of payment in the first instance out of the estate is to affect the incidence of the tax. On the contrary, the statute clearly indicates that the tax is to rest upon the persons taking under the will, rather than upon the estate generally. It has long been settled law that the inheritance tax is not a tax upon property, but upon the right to receive property. *Nunnemacher v. State* (1906), 129 Wis. 190, 204, 108 N. W. 627. Since the right to receive is a right of the persons receiving, it is upon those persons that the burden of the tax must rest unless the testator has made some other provision in his will.

Nothing in *Will of Stack* (1935), 217 Wis. 94, 106, 258 N. W. 324, is contrary to the view of the trial court that the appellant, Michael, must reimburse the executors for his proportionate share of the tax already paid by them. In that case Earl and Sylvester Stack petitioned the county court to establish a lien upon certain real estate held in trust under the will of their father. The petitioners were in effect re-

maindermen whose interests were postponed to those of the beneficiaries under the trust. Pursuant to a judgment entered in the course of administering the estate, the executors paid the inheritance tax out of the corpus of the estate rather than taking a part out of the trust. With reference to the petition to have the tax declared a lien, the court said:

"We find no warrant in the law under the circumstances of this case for establishing a lien upon the trust *res* in favor of petitioners. It is claimed that a lien arises by reason of sec. 72.07. This section authorizes an executor to sell property to pay inheritance taxes, but it makes no provision for a lien. We find nothing in the section from which it can be inferred that where the taxes are paid without a sale a lien upon the property which might have been sold arises."

This statement in *Will of Stack* relates only to the question whether a lien arises upon real estate which the executor might have sold to pay taxes. In the present case there is no petition to establish a lien. The question is whether Michael should pay his share of the tax. As we have already said, the legislature intended that the burden of the tax should fall upon the persons taking under the will. It is immaterial whether they pay the tax themselves in the first instance, or whether the executor, administrator, or trustee makes payment to the state and is afterward reimbursed by the legatees. Convenience dictates the latter procedure, and it is common practice. In *Will of Stack* the petitioners were precluded from showing that they had been forced to pay more than their fair share of the tax, because the executor paid the tax out of the estate pursuant to a judgment which was binding upon the petitioners, and from which no appeal was taken. That an apportionment might have been made before the matter was finally settled by the judgment is indicated in the following language (p. 108):

"The conduct of the petitioners is not wholly equitable. The tax was based on the rate applicable to next of kin of the deceased. Without making any allocation whatever, peti-

tioners now seek to apply the highest brackets applicable in cases of trust property and deduct the whole amount so ascertained from the amount paid. This would leave them with much less than their proportionate share of the taxes. This is hardly an equitable method of apportioning the tax. If an advantage has been derived as against the United States and the state of Wisconsin because the tax was assessed upon a basis which now appears to have been wrong, an equitable apportionment would require that the trust *res* be assigned its share of the advantage."

It is considered that the ruling of the trial court requiring Michael to bear his proportionate share of the tax is correct. It was entirely proper to permit the executors to deduct that amount from the sum owing to Michael under the terms of the will.

*By the Court.*—The first order in so far as it permits the setting up of the trust fund out of the present assets of the estate reckoned at the inventory value is reversed, and the cause remanded with instructions to enter an order in accordance with this opinion. The second order is affirmed.